# EX PARTE HIGASHI.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MARCH 28, 1906.          DECIDED APRIL 6, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

JUDGE—*disqualification.*

A justice of this court is not disqualified from sitting in a case which requires consideration of an act of which he expressed approval to a member of the judiciary committee of the legislature when the bill was before it.

STATUTE—*partial repeal.*

Act 59 of the Laws of 1905, which provides that infamous punishment shall not be imposed on persons convicted of misdemeanors, repeals that portion of Sec. 3179, R. L., authorizing hard labor in the sentence of imprisonment but does not repeal that portion which authorizes imprisonment.

INDICTMENT—*infamous punishment—fifth amendment—confinement in Honolulu jail.*

A sentence to imprisonment for a misdemeanor does not become infamous punishment requiring an indictment under the fifth amendment by reason of the convicted person being confined in Honolulu jail.

ID.—*trial by jury—sixth amendment—waiver of jury.*

Under the sixth amendment a misdemeanor for which imprisonment may be imposed for as long a term as one year requires a trial by jury although it does not require an indictment as for an infamous offense; but the right to a trial by jury in the first instance is waived under Sec. 1664, R. L., by a defendant not demanding a jury when brought before a magistrate for trial but submitting to the jurisdiction of the magistrate. The act authorizing trial by the magistrate in a case like this, provided the defendant does not demand a jury, is constitutional.

OPINION OF THE COURT BY HARTWELL, J.

The appellee, who was a petitioner for a writ of habeas corpus, claims that the chief justice is disqualified because he

expressed to a member of the judiciary committee of the legislature his approval of the bill which became Act 59, Laws of 1905, it being material to decide whether the act, in providing that no person upon conviction of a misdemeanor shall be imprisoned in Oahu prison or subjected to any infamous punishment, amends Sec. 3179, R. L., authorizing imprisonment at hard labor not exceeding one year. It is claimed that approval of the bill is like the former relation of attorney and client, which, as held in the *Notley* will case, ante, p. 393, is not a disqualification, but the petitioner was allowed to argue that the decision was wrong. It is urged that the court having for many years construed the article in the Constitution which enumerates causes of disqualification as not exclusive of the case of a judge who had been of counsel, Congress intended that this construction should be placed upon the same provision in the Organic Act. It is further contended that the common law, which does not disqualify a judge except for pecuniary interest, is not law in Hawaii because contrary to Hawaiian judicial precedents; and that as absence of bias is essential to judicial impartiality its presence disqualifies a judge from performing judicial functions; that the enumerated causes of disqualification by pecuniary interest, relationship and former judgment are founded on bias, but do not include all instances, and that the law ought to be so construed as to secure the object intended.

It is obvious that if the alleged disqualification is based upon a principle of law—that bias per se disqualifies—it is immaterial from what circumstances it arises or what construction has been placed upon constitutional provisions.

The petitioner cites the *Mankichi* case, 190 U. S. 197, and *Carter v. Gear*, 197 U. S. 348, as authority that "in interpreting a statute * * * the intention of the law making power will prevail, even against the letter of the statute." As the Joint Resolution of Annexation contained no express provision for extending the Constitution of the United States to Hawaii or declaring that no Hawaiian laws inconsistent with the Constitution should remain in force, the court declined to read into the resolution such unexpressed provision. In the other case

the court found in Sec. 81 of the Organic Act "authority for a recognition of the laws previously existing in Hawaii concerning the constitution of its court and their method of procedure." The cases do not support the appellee's contention. A law which is clear and unambiguous and the application of which in its literal terms results in no peculiar hardship or in absurdity, requires no construction or interpretation. All that the court can do in such cases is to declare the law to be as it is without undertaking to modify its terms.

The substance of the contention is (1) that the Organic Act, in naming certain causes which disqualify a judge, does not name all of them; (2) that the requirement of the Organic Act that the supreme court shall consist of a chief justice and two associate justices, with the proviso that the place of an absent or disqualified justice may be filled as provided by law, namely, by a circuit judge, does not refer solely to disqualifications named in the act, but to such other causes of disqualification as the court may deem to be sufficient; (3) that the uniform decisions of this court that a judge is disqualified who has been of counsel in the case must be treated as if the disqualification were expressly declared in the Organic Act, and (4) that bias, being generally a cause of disqualification by constitutional or statutory provisions in the several states, can, in the absence of such provisions in the Organic Act or constitutions of Hawaii, be regarded by this court as a sufficient disqualification. We see no sufficient reason to sustain the contention.

To hold that bias is a cause of disqualification, under certain circumstances, would require the same ruling under all circumstances and whether the bias would be likely to influence the judgment or not. This would be judicial legislation. The fact that bias, existing in various specified relations, or generally, has elsewhere been made the subject of legislation, indicates that legislation was considered to be necessary. We hold that the chief justice is not disqualified.

This case is an appeal by the Territory from an order of the circuit judge, in a habeas corpus proceeding, discharging the petitioner who was imprisoned in Honolulu jail under a

sentence of thirty days' imprisonment imposed by the district magistrate of Honolulu for the offense of "aiding and assisting in maintaining a lottery contrary to Section 3173 R. L." The petition for the writ of habeas corpus alleges that this sentence of imprisonment without hard labor was unauthorized by law and the conviction by the magistrate was in violation of the third article of the Constitution providing that "The trial of all crimes, except in cases of impeachment, shall be by jury," and of the requirement of the fifth amendment that "no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury," and of the sixth amendment that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury."

The petition further alleges that the petitioner was imprisoned by the high sheriff in "what is arbitrarily designated by law as Honolulu Jail, but which your petitioner avers is in fact a part of Oahu Jail, the latter being the Territorial penitentiary in which are confined all manner of felons convicted of infamous crimes under the laws of said Territory, including persons under sentence of death, that that portion of said penitentiary designated as Honolulu Jail is under the control of said High Sheriff, who is also the keeper or warden of said penitentiary, that the only means of ingress and egress to said Honolulu Jail so called, is through the gates, office and yard of said penitentiary, and that all persons confined in said Honolulu Jail so called, including your petitioner, are and must be imprisoned in said penitentiary before being confined in said Honolulu Jail so called, and are while so imprisoned in said penitentiary, photographed and registered upon the books of said penitentiary as inmates thereof, that is to say, there is entered upon the journal of said penitentiary, the sex, age, height, personal description of each prisoner thereafter confined in Honolulu Jail, so called, together with his last place of abode and place of nativity and the date of reception and discharge of each such prisoner, that all persons confined in said Honolulu Jail so called are numbered sequentially with felons

under sentence for infamous offenses and imprisoned in said penitentiary, that all persons confined in said Honolulu Jail so called, are, without exception, stripped of their citizen apparel and are compelled to don and wear a conspicuous prison garb, that the food served to the inmates of said Honolulu Jail so called is coarse and meagre, being the same in kind and quantity that is served to the felons in said penitentiary, being prepared by the felons in said penitentiary and served from the same kitchen in said penitentiary, that the sick inmates of said Honolulu Jail so called are confined in the hospital in said penitentiary together with the sick and disabled felons in said penitentiary, and are attended and served by the same persons, to wit, persons under sentence in said penitentiary for infamous crimes, that the only difference between the treatment accorded the felons imprisoned in said penitentiary proper, and the persons imprisoned in that portion of said penitentiary arbitrarily designated as Honolulu Jail, is that said felons are required to perform hard labor while the persons imprisoned in said Honolulu Jail so called, are not required so to do." Also it is further alleged "that the classification or designation of a part of said penitentiary as Honolulu Jail, is wholly arbitrary and unreasonable and is a mere pretense or subterfuge, the persons alleged to be confined in Honolulu Jail so called, including your petitioner, being in fact confined in the said penitentiary, the same being the Territorial prison in which the death sentence is executed, and in which felons under sentence for infamous crimes are confined as aforesaid, and that the punishment inflicted upon your petitioner in the premises is an infamous punishment and renders the crime with which he was charged and whereof he was convicted by said District Magistrate an 'infamous crime' within the meaning of the Fifth Amendment to the Constitution of the United States."

In argument the petitioner presented, as a further reason why his conviction was unlawful, that by the Organic Act, Sec. 83, "No person shall be convicted in any criminal case except by unanimous verdict of the jury."

The high sheriff's return to the writ "admits that the way of ingress and egress to said Honolulu Jail is through the office and yard of the Oahu Jail, but denies that said petitioner, or any person not convicted of a felony, is confined in said Oahu Jail or any part thereof"; "admits that persons sentenced to imprisonment for a period of more than six months are photographed for the purpose of identifying them, and the names and descriptions of all persons confined in either Oahu Jail or Honolulu Jail are registered in record books kept for that purpose in the office which is common to both jails, in which office such records are kept by persons employed by respondent for that purpose"; "shows that said Honolulu Jail is in no sense a part of Oahu Jail or the Territorial Penitentiary; that it is separated therefrom by a high wall, and the building in which persons are there confined is separate and distinct from the buildings of the Oahu Jail or Territorial Penitentiary and far removed therefrom; that the inmates thereof are not permitted or allowed to mingle with persons confined in said Oahu Jail or Territorial Penitentiary, and that it appears by such record books as are kept in said office hereinbefore referred to, that the persons confined in said Honolulu Jail have been convicted of misdemeanors"; "admits that persons confined in said Honolulu Jail are compelled to wear a common uniform of blue denim, but that said uniform is plain and inconspicuous, and persons confined in said Honolulu Jail are not compelled to wear the same in public or do hard labor or labor of any kind in public dressed therein. That the food served to said prisoners confined in said Honolulu Jail is of good quality and in sufficient quantity, and is constantly inspected by the prison physician," and "that there is a hospital used in connection with said jail, where for the convenience of the prison physician and the proper care of said prisoners, all sick are permitted to be taken and treated, but that petitioner is not an inmate thereof or confined therein, and cannot be and has not been compelled to go thereto," but "denies that the only difference in the treatment accorded felons imprisoned in the penitentiary proper and the prisoners imprisoned in the Honolulu Jail is that said

felons are required to perform hard labor, while the prisoners confined in the Honolulu Jail, so called, are not required so to do, alleging in this behalf that the two jails are separate and apart, that the prisoners therein confined are kept separate and apart, that the prison dress required is different, that felons are required to undergo infamous punishment, to wit, hard labor in public in striped uniform prescribed by prison rules, while those confined in the Honolulu Jail cannot be compelled to do or perform hard labor of any kind or description, in public or otherwise, in prison uniform or otherwise"; "that the classification or designation of a part of said penitentiary as Honolulu Jail is wholly arbitrary and unreasonable, and a mere pretense and subterfuge, alleging in this regard that the said jail, as hereinbefore set forth, was established by law for the purpose of confining therein persons convicted of misdemeanors, and no others," also "that the petitioner was confined in said penitentiary, or the Oahu Jail, or that in the Honolulu Jail, where said petitioner was confined, the death sentence is ever executed, or that felons are confined therein, or that the punishment inflicted on said petitioner is an infamous one."

To this return the petitioner filed a "traverse affidavit." A stipulation was filed that the evidence in this case should be the same as that taken and filed in the case of Chun Hoon on habeas corpus.

The material facts in the case appear to us to be as set forth in the return of the high sheriff. The Honolulu jail and Oahu prison are distinguished from each other by the statute which restricts the confinement of persons convicted of misdemeanors to the former, and the confinement of persons convicted of felony to the latter. Acts 58 and 59, Laws of 1905.

The circuit judge, in discharging the petitioner, ruled as follows: "In my opinion Section 3179 of the Revised Laws has not been amended or modified, but is in full force and effect. That being true, and the punishment therein prescribed, which may be imposed, being infamous in its nature, it follows that the judgment of conviction by the District Magistrate was and is void: First, because the statute does not permit a sen-

tence of imprisonment without hard labor (Territory vs. Savidge, 14 Haw. 286); and, Second, because, under the Constitution of the United States in criminal offenses of this character, there must be a presentment or indictment of a grand jury in a court of competent jurisdiction." ·

We will first consider whether the petitioner was liable to infamous punishment by reason of his confinement in Honolulu jail.

By statute, Sec. 2702, R. L., "Every offense, not a felony, is a misdemeanor," a felony being defined "an offense that is punishable with death or with imprisonment for a longer period than one year." Act 58, Laws of 1905, after declaring in Sec. 1, "That the building now known as the new prison erected in Iwilei, Honolulu, in the year 1904 on the Ewa side of the building known as the Oahu Prison, shall hereafter be known as the Honolulu Jail," enacts, Sec. 2: "That no person convicted of a felony or suffering infamous punishment shall be sentenced to be confined or shall be confined within said Honolulu Jail so designated. No person confined therein shall be subject or compelled to perform labor during the term of his imprisonment." By Act 59, "No person committed or held for trial or to secure his attendance as a witness or upon civil process or for contempt or upon conviction of a misdemeanor or otherwise by authority of law, except upon conviction of a felony, shall be imprisoned in Oahu Prison or subjected to any infamous punishment."

Hence, it follows that if the statute does not authorize imprisonment at hard labor as a punishment for a misdemeanor, no person convicted of a misdemeanor can lawfully be subjected to any infamous punishment unless such punishment necessarily results from confinement in the Honolulu jail under the conditions existing there, with particular reference to the proximity of convicted felons.

In *Mackin & Another v. U. S.*, 117 U. S. 348, the court held "That at the present day imprisonment in a State prison or penitentiary, with or without hard labor, is an infamous punishment. It is not only so considered in the general opinion of

the people, but it has been recognized as such in the legislation of the States and Territories, as well as of Congress. In most of the States and Territories, by constitution or statute, all crimes, or at least statutory crimes, not capital, are classed as felonies or as misdemeanors, accordingly as they are or are not punishable by imprisonment in the State prison or penitentiary." In that case the defendants were charged with a conspiracy to defraud the United States by breaking open a package containing a return in an election for choice of a representative to Congress, altering the certificate of the result of election, the poll book and tally list of votes for each candidate and a large number of the ballots and substituting spurious papers in their stead in violation of certain acts of Congress. Upon their conviction by a jury they had been sentenced to a fine of $5000 each and to be imprisoned for two years in the penitentiary of the State of Illinois. The court said that by the U. S. Revised Statutes, Secs. 5541, 5542, 5539, "a sentence 'to imprisonment for a period longer than one year,' may be ordered to be executed in a State prison or penitentiary; and the convict, while thus imprisoned, is 'subject to the same discipline and treatment as convicts sentenced by courts of the State.' "

The prisoner in this case was expressly exempt from the discipline and treatment imposed upon convicted felons. Acts 58 and 59 contemplate the complete separation of Oahu prison from Honolulu jail, and complete separation and treatment of convicted felons and persons convicted of misdemeanors. Undoubtedly imprisonment of a person convicted of a misdemeanor with convicted felons would create an impression that he belonged to the felon class whether treated as they were or not, since compulsory association of itself degrades, but we think that under the statutes which are applicable to this case, and under the conditions shown to exist, the petitioner is not undergoing infamous punishment and is not liable to be subjected to it if the statute has been amended so as to dispense with the penalty of hard labor when imprisonment is imposed.

What then is the effect of Act 59? It is contended by the petitioner that it prohibits the high sheriff from inflicting the

punishment of hard labor upon persons convicted of misdemeanors and sentenced to imprisonment at hard labor, or else that it repeals the entire clause, "or imprisonment at hard labor not exceeding one year" and not merely the words "at hard labor," and that this must be so because a sentence of imprisonment at hard labor is indivisible, a sentence of imprisonment only, when the law authorizes imprisonment at hard labor, being invalid as shown in cases like *In re Cooper,* 3 Haw. 20.

It is true that such a sentence is indivisible into two separate sentences of imprisonment and of hard labor. It is equally true that the statute can be amended by repealing that portion of it which includes hard labor. The only question is whether Act 59 does, to that extent only, repeal the portion of Sec. 3179 which authorizes imprisonment at hard labor. We do not doubt the meaning and effect of this act, but if this were uncertain "One of the most effectual ways of discovering the true meaning of the law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the legislature to enact it." Sec. 12, R. L.

There was no reason for limiting the power of the sheriff to impose infamous punishment for he had no such power. There is no reason to suppose that the legislature meant to abolish all imprisonment in cases of misdemeanor, but there is every reason to suppose that they did not intend to leave the community at the mercy of the criminal or vicious class in all cases of misdemeanors in which the statute does not explicitly authorize imprisonment only. It would also be absurd to suppose that the legislature meant to prohibit the sheriff from carrying into effect sentences authorized by law. "When the words of a law are ambiguous, every construction which leads to an absurdity should be rejected." Sec. 13, R. L.

On the other hand, it was generally understood that the laws authorizing sentences of imprisonment at hard labor for offenses intended to be prosecuted upon information must be amended.

Another rule which applies is that "Laws in pari materia, or upon the same subject matter, must be construed with refer-

ence to each other; what is clear in one statute may be called in aid to explain what is doubtful in another." Sec. 11, R. L.

To hold that the act takes away power to sentence to imprisonment persons convicted of misdemeanors would make unnecessary the provisions that no person upon conviction of a misdemeanor shall be imprisoned in Oahu prison and that no person confined in Honolulu jail shall be subject to perform labor, or that no person convicted of a felony or suffering infamous punishment shall be sentenced to be confined in Honolulu jail.

The only meaning that can be given to Acts 58 and 59 is that persons sentenced for misdemeanors shall not be confined in Oahu prison or subjected by sentence of court to hard labor and that no person convicted of felony shall be confined in Honolulu jail. It is immaterial whether the law says that a penalty for a misdemeanor shall be imprisonment or that wherever imprisonment at hard labor was a penalty hard labor shall no longer be imposed as part of the penalty. "Laws may be repealed either entirely or partially by other laws." Sec. 19, R. L.

The act cannot be disregarded. It must be given effect and there is no other which it can have than to limit the power of a judge to imposing a sentence of imprisonment.. Act 59 and Sec. 3179 can stand together in no other way.

"The repeal of a law is either express or implied; it is express when it is literally declared by a subsequent law; it is implied when the new law contains provisions contrary to, or irreconcilable with, those of the former law." Sec. 21, R. L.

This is not an instance of applying the rule that implied repeals of laws are not considered favorably or that doubtful criminal statutes shall be construed in favor of the liberty of the person. It is hardly a case which requires more than to declare the law.

Although we hold that in this case an indictment was not required by the fifth amendment it remains to consider whether the offense is such as to require a jury trial under Art. 3 of the Constitution, or the sixth amendment, or the provision cited

from Sec. 83 of the Organic Act. In looking at the previous provisions of the section it will be seen that it continues in force the laws of Hawaii relative to the judicial department including civil and criminal procedure, "except as amended by this act"; repeals the laws "which require juries to be composed of aliens or foreigners only"; enacts that jurors shall be male citizens of the United States 21 years of age who can understandingly speak and write the English language, after which provisions come the words, "No person shall be convicted in any criminal case except by unanimous verdict of a jury," which are followed by the provision, "No plaintiff or defendant in any suit or proceeding in a court of the Territory of Hawaii shall be entitled to a trial by a jury impaneled exclusively from persons of any race." The section finally authorizes the drawing of grand juries as provided by Hawaiian statutes for petit juries and that circuit courts in like manner may subpoena witnesses for grand juries.

"Where the words of a law are dubious, their meaning may be sought by examining the context, with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning." Sec. 10, R. L.

It is clear from the context that the act does not require that no person shall be tried for any criminal offense except by a jury, but that in all criminal trials by a jury an unanimous verdict shall be necessary for conviction.

As to constitutional guaranties of a jury trial of all crimes and of the right to a speedy and public trial by an impartial jury in all criminal prosecutions, they do not refer to petty offenses or violations of ordinary municipal ordinances or to such offenses as at common law are summarily tried by a justice of the peace. *Callan v. Wilson,* 127 U. S. 540.

Under similar provisions of state constitutions the summary jurisdiction of magistrates is sustained "in the trial of violations of the usual municipal police regulations, enacted to preserve the peace, good order, health, safety, convenience and comfort of the inhabitants of the local community, and has been expressly held to include infractions of ordinances forbid-

ding disorderly conduct, disturbing the peace, molesting religious societies, profane swearing, public drunkenness, 'riotous' conduct, corner lounging, carrying concealed weapons, assault and battery, petit larceny, (if not a felony), selling lottery tickets, keeping gambling house, nuisance, obstructing sidewalk or harbor, dogs running at large, violating Sunday regulations, selling watered or adulterated milk, violating market regulations, resisting an officer, lewd women on street, keeping bawdy house, vagrancy, vagrancy and disorderly conduct, under habitual criminal act, professional thieves, pickpockets, etc., in and about Central railroad station in Philadelphia, selling intoxicating liquor and selling liquor on Sunday." Sec. 329, McQuillin, Mun. Ord.

The expense and delays of grand jury investigations of such cases and of jury trials, with the failure and miscarriage of justice frequently resulting would be unreasonable and, as shown by the case above cited and the cases which it cites with approval, neither common justice nor common sense, as exemplified in the U. S. Constitution, requires such results.

As said by Mr. Justice Holmes in *Kepner v. U. S.*, 195 U. S. 134, "At the present time in this country there is more danger that criminals will escape justice than that they will be subjected to tyranny."

The offense of gambling, whether prohibited by municipal ordinances or territorial statute, is not a crime which from its nature requires the publicity of a jury trial but when it may be punished, as in the present case, by imprisonment for a period as long as one year, the offense becomes sufficiently grave by reason of the penalty to require a jury trial, if demanded by the defendant. In *Rasmussen v. U. S.*, 197 U. S. 516, the plaintiff in error had been indicted for violating Sec. 127 of the Alaska Code prohibiting the keeping of a disreputable house, the penalty for which was a fine not less than $100 nor more than $500 or imprisonment not less than three months nor more than one year. The Alaska Code, adopted by Congress, provided that in trials for misdemeanors six persons should constitute a legal jury. It was held that this provision of the act of Congress

"was repugnant to the sixth amendment of the Constitution of the United States."

The decision is conclusive in the present case in requiring us to hold that under the sixth amendment the petitioner was entitled to "enjoy the right to a speedy and public trial by an impartial jury."

*Schick v. U. S.,* 195 U. S. 65, a case of a statutory offense involving a penalty of $50, held: "When there is no constitutional or statutory mandate and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy," and that a jury could be waived in that case. In *Capital Traction Co. v. Hof,* 174 U. S. 1, it was held that the right of a jury trial in common law suits secured by the seventh amendment was not infringed by an act of Congress giving jurisdiction to justices of the peace of the District of Columbia for the trial of civil causes to $300, with a right of appeal to a jury trial in a court of record on giving security to pay the judgment of the appellate court. The present case comes within the provisions of Sec. 1664, R. L., giving to district magistrates certain criminal jurisdiction, with the proviso that if the accused in any such case "shall have the right to a trial by jury in the first instance, the district magistrate, upon demand by the accused for such trial by jury, shall not exercise jurisdiction over such case, but shall examine and discharge or commit for trial the accused as provided by law, but if in any such case the accused shall not demand a trial by jury in the first instance, the district magistrate may exercise jurisdiction over the same subject to the right of appeal as provided by law." The petitioner, not having demanded the trial by jury to which he was entitled, submitted his case to the jurisdiction of the magistrate, thereby waiving a jury. *Phillips v. Preston,* 5 How. 290; *Kearney v. Case,* 12 Wall. 284; *Perego v. Dodge,* 163 U. S. 166. In *Schick v. U. S.,* supra, Mr. Justice Harlan in his dissenting opinion maintained that a jury can be waived in no misdemeanors other than "petty or minor crimes which at common law can be tried without a jury," adding: "An enumeration of all the crimes against the United States which

may be reasonably declared to belong to the class known at the common law as petty offenses, punishable *under legislative sanction* without the intervention of a jury, need not here be attempted. Nor is it necessary to express any final judgment upon the question whether the particular crime here involved might, *by statute,* be placed in that class and tried without a jury. It is enough to say that even if Congress could place it in that class, and authorize its trial by summary proceedings, without a jury, or with a jury of less than twelve, it has not done so." His opinion was largely based upon the ground that there was no legislative authority for waiving a jury in that case. "No court at common law assumed, without a jury, to try any offense, however trivial or petty, except under the authority of a statute conferring authority to that end. * * * My point is that no criminal offense or crime against the United States can be tried except by jury, if the plea be not guilty, unless it be a petty offense or crime, *and* unless the legislative department declares that it may be so tried. If the offense or crime be, in reality, in its essence, a petty one, then Congress may authorize it to be tried without a jury. But Congress has not so declared in respect of the offense or crime charged against the present defendant." Ib. If Congress could authorize a trial without a jury of cases like this under consideration, the act of the territorial legislature, Sec. 1664, R. L., is equally constitutional. The offense of gambling is not "in its essence" one which either Congress or the legislature could not make triable without a jury subject to appeal or, as in this case, to the defendant's right, if demanded, to a jury in the first instance. Similar legislation is generally held to be valid and we know no case to the contrary under constitutional provisions declaring the right of trial by jury inviolable. *In re Staff,* 63 Wis. 285; *Ward v. People,* 30 Mich. 115; *State v. Kaufman,* 51 Ia. 578; *Lavery v. Com.,* 101 Pa. 560; *State v. Worden,* 46 Conn. 349; *Edwards v. State,* 45 N. J. L. 419; *Com. v. Dailey,* 12 Cush. 80; *Davst v. People,* 51 Ill. 286. And see *Hallinger v. Davis,* 146 U. S. 319; *In re Belt,* 159 U. S. 99.

A defendant may wish to be tried by a magistrate in the first instance, thereby learning what evidence will be produced

against him on appeal to a jury. There is no constitutional prohibition against his doing so. As the petitioner did not demand a jury the statute gave the magistrate jurisdiction to try the case, subject to appeal. When a jury is demanded in a case like this not requiring an indictment, the magistrate commits the defendant for trial by jury in the circuit court if in his opinion the evidence adduced shows probable cause to believe that a jury would convict. Sec. 2806, R. L. We hold that the statute is constitutional and that the petitioner was lawfully tried and convicted.

The judgment of the circuit judge is reversed and the petitioner is remanded to custody.

*G. D. Gear* for petitioner.

*M. F. Prosser, Deputy Attorney General,* for the Territory.

#### CONCURRING OPINION OF FREAR, C.J.

I concur in the foregoing decision but base my opinion on the question of disqualification in part upon different grounds.

After hearing counsel I feel if anything more strongly than when I dissented in the *Notley* case that having taken an active part as counsel in a case is a disqualification under Hawaiian practice and precedents, but I do not see how that has any bearing on the present case.

Even if I had given a formal opinion as to the validity and effect of the statute, as well as expressed an approval of it, as an attorney to a client in some other case, I would not for that reason be disqualified in this case, with which or with either of the parties to which so far as this case or this statute is concerned I had never had anything to do. But as matter of fact I have not sustained in respect of this statute in any case or matter or with any person or body any relation of attorney or other analogous relation.

The question therefore is reduced to this, whether an expression of approval of a statute to some person disqualifies a judge. An expression of approval or an opinion on either the law or the facts of a case would not in itself disqualify even a juror from sitting in that very case, for it might appear that he could

give a fair verdict notwithstanding. If a judge were disqualified because he had expressed an opinion on the law or an approval of it, he could not sit in any case in which was involved a question of law upon which he had expressed an opinion as a student, or as an attorney or in a decision or dictum by him as a judge in some other case, or in an opinion to the executive or legislative branch of government such as the justices of this court were for many years and the justices of many other supreme courts are now required by constitutional provision to give under certain circumstances. That would be absurd. In the absence of constitutional or statutory provision to the contrary one may sit as a member of an appellate court on an appeal from his own decision as a trial judge in a case, and that was done here regularly until the reorganization of the judiciary in 1892, and has been done in many other jurisdictions. Most Hawaiian statutes have been drafted by members of the supreme court or members of the bar who afterwards became members of the court or received the votes of members of the legislature who afterwards became members of the court and yet it has never before been contended that any such judge was disqualified for that reason from sitting in a case involving the construction of any such statute. This is equally true to a greater or less extent in other jurisdictions. I may add, though it is immaterial, that the precise question now raised under the statute was never suggested and had never occurred to me and I had never formed any opinion in regard to it.