273 So.2d 475

**In re Willard EDWARDS**

**v.**

**CITY OF HUNTSVILLE, Alabama.**

**Ex parte The CITY OF HUNTSVILLE, Alabama, a municipal corporation.**

**Civ. 58.**

Court of Civil Appeals of Alabama.

Feb. 14, 1973.

Robert L. Hodges, and Ford, Caldwell, Ford & Payne, Huntsville, for petitioner.

Martinson, Manning & Martinson, Huntsville, for respondent.

BRADLEY, Judge.

Review is sought in this court by way of the writ of certiorari of a judgment rendered by the Circuit Court of Madison County in favor of the respondent in a workmen's compensation case.

The respondent claimed that he had been permanently and totally disabled as a result of an injury suffered while engaged in his employment with petitioner as a dragline operator. Petitioner, after its demurrer was overruled, answered the complaint by admitting that both parties were subject to the Alabama Workmen's Compensation Law and that the relationship of employer-employee existed between the parties at the time respondent's accident-caused injury occurred; that respondent's injuries arose out of and in the course of respondent's said employment; that petitioner had immediate notice of the accident; that respondent's average weekly wage at the time of the accident was $108.60 and that he was married, with four dependent children; that as a result of the accident respondent was temporarily totally disabled, for which he was paid at the rate of $44.00 per week for 115 weeks and that his medical expenses caused by the accident and which were incurred over a period of two years have been paid. Petitioner denies the respondent is totally and permanently disabled from performing his line of work.

After a trial without a jury the court found that respondent was totally and permanently disabled and awarded him compensation at the rate of $44.00 per week for 285 weeks, giving credit to the petitioner for the 115 weeks of compensation previously paid.

The evidence and the inference to be received therefrom reveal that respondent, a man of 35, married, the father of five children, was employed by petitioner on May

28, 1968 as a dragline operator. On this day, while engaged in the duties of his employment, respondent was attempting to load a roll of cable onto a pickup truck to be taken to his dragline to replace a cable that had broken when he felt a snap and sharp pain in his lower back. He had to lay down on the ground because of the pain; later he was carried to a Dr. Jordan for examination. Dr. Jordan prescribed medication and bed rest. This treatment did not help and respondent was referred to Dr. Mitchell, an orthopedic surgeon. Treatment was attempted but finally an operation was performed wherein the disc in the lumbar sacral region was removed and the fifth lumbar and the sacral vertebra were fused. This operation occurred on July 10, 1968 and respondent remained in the hospital for about 25 days. Respondent was fitted with a back brace during this period and was told to wear it whenever he did any lifting.

Respondent has been under the care and supervision of Dr. Mitchell from the time he was first referred to him by Dr. Jordan up to the time of trial. Dr. Mitchell said that respondent had a physical disability of 25%.

Respondent was hospitalized again in 1970 for about 14 days for his back problems, but no operations were performed.

Respondent stated that he suffers with pain nearly all the time in his back and down into his legs. Although he has attempted to return to work as a dragline operator, respondent has not worked since his injury because it hurts too much to use his legs and back. He cannot walk very far because of pain.

Dr. Mitchell stated that in his opinion that the injury suffered by respondent on May 28, 1968 was the sole cause of his disability and further that in his opinion the respondent would not be able to do any work unless he was re-trained.

Dr. Haws, who participated in the operation on respondent's back in 1968, said that he performed surgery on the disc at the fifth lumbar vertebra, and then Dr. Mitchell fused the fifth lumbar vertebra to the sacral vertebra. Dr. Haws stated that his surgery was essentially the same as he had performed on the respondent's L–5 disc in 1965. Dr. Haws said that the respondent had apparently fully recovered from the 1965 operation, although he considered that respondent sustained a 15% permanent partial physical disability as a result of that operation. He further stated that the 1968 operation caused another 15% physical disability for a total of 30%. He testified that he thought that respondent could do the kind of work he had been doing, i. e., operating a dragline, for the reason that respondent's complaint of pain was more psychological than physical.

An expert personnel management consultant testified that he had tested and talked to respondent and considered respondent unemployable unless he should be retrained.

Petitioner assigned six grounds of error, but argued only two of the six grounds. Those grounds not argued are deemed waived. Rule 9, Supreme Court Rules. The argument primarily asserts that the respondent is not totally and permanently disabled because the trial court failed to find as a fact that respondent's ability to earn is permanently and totally impaired.

In support of these assignments of error, petitioner argues that the trial court's finding of fact, which is as follows:

"The Court finds that the plaintiff has suffered 100% total disability to the body as a whole as a result of his injury and while he is not 100% physically impaired, he is without a doubt permanently totally disabled to engage in his occupation as a drag line operator, heavy equipment operator, or laborer,"

is not supported by the evidence and that the finding is too restrictive for the reason that the law does not restrict the impairment to performing one's normal trade but

requires the impairment to eliminate any reasonably gainful employment.

In Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315, the Supreme Court had before it a case involving the total and permanent disability of a man because of the loss of three fingers on his right hand which, in turn, caused the loss of use of the right arm to the extent of about 85% to 100% and injury to the right shoulder and upper back. It was determined that this man was unsuited for manual labor, the only type work he had ever done. It was further determined that this man could not read or write, his education had stopped at the first grade. Also, on three occasions this man sought work from his former employer but was told it had nothing for him and suggested that he be re-trained, but said that they knew of no employment for which he could be trained.

The court concluded that:

"Total permanent disability may occur under the provisions of the Workmen's Compensation Act, Code of 1940, Title 26, § 279(E) 3, without loss of specific members of the body. [Citations omitted.] And total disability within the Workmen's Compensation Act does not mean absolute helplessness or entire physical disability, but means inability to perform the work of one's trade or inability to obtain reasonably gainful employment. [Citations omitted.]

"Due to the loss of three fingers of his right hand and injury to his right wrist and other injuries, causing loss of the use of his right arm for manual labor, and considering the fact that the appellee is unsuited for work other than manual labor, the circuit court did not err in adjudging the appellee Fate Grimes as totally and permanently disabled. [Citations omitted.]"

The scope of review permitted to an Alabama appellate court where the claim is made that the finding or judgment of the trial court is without support in the evidence is limited to the determination of whether there is any legal evidence to sustain said conclusion. Alabama Textile Products Corp. v. Grantham, 263 Ala. 179, 82 So.2d 204. We are also directed to give that construction to the Workmen's Compensation Law as will accomplish its beneficial purposes. Benson-Jackson-Mathers Post No. 5106 v. Donaldson, 267 Ala. 60, 99 So.2d 688.

We are convinced that the finding of the trial court concluding that respondent is totally and permanently disabled from pursuing his occupation as a dragline operator or heavy equipment operator is supported by legal evidence.

The testimony of the respondent, Dr. Mitchell and Mr. Breen is all to the effect that respondent cannot pursue his occupation due to his disability.

The trial court also found that respondent's disability completely prevented him from doing work as a common laborer. This finding is also supported by the evidence taken in this case.

Yet, petitioner contends that the finding of the court does not exclude the possibility that respondent could not find some gainful employment. There was evidence in the record that he had not sought other employment.

Another look at the evidence in this case reveals that respondent was practically illiterate, had never, since he was sixteen years of age, done anything except manual labor and operated heavy equipment. The evidence is also to the effect that respondent would have to be re-trained if he were to be employable, the success of such an effort is highly unlikely due to the respondent's age and lack of education.

The facts in the case at bar are very similar to those in the Grimes case, and the conclusion of the Supreme Court in that case to the effect that Grimes was not only completely disabled from performing the work for which he had been trained but was also unsuited for any other work with-

out being re-trained is equally applicable to the present case.

We therefore say that the findings and judgment of the trial court adequately concluded that respondent was unsuited for any work other than what he had done and been trained to do, i. e., heavy equipment operator and manual laborer, and now he was not able to do that work; hence, under *Grimes*, he was totally and permanently disabled within the meaning of the Workmen's Compensation Law from being gainfully employed. We find no error in the trial court's judgment, and it is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.