[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 920 
Barbara Young initiated this workmen's compensation case by alleging in the Circuit Court of Madison County that she is totally and permanently disabled as a result of contracting bilateral thrombophlebitis during the course of her employment as a licensed practical nurse at the Huntsville Hospital, Huntsville, Alabama. She sought both compensation and medical expenses under Title 26, Section 313 (34), Code of Alabama 1940. (Recomp. 1958) (Supp. 1973), and Title 26, Section 262 et seq., Code of Alabama 1940 (Recomp. 1958). After a hearing the trial court denied petitioner all relief. This is the decision to be reviewed here.
Petitioner is a fifty-three year old woman who has worked most of her adult life at jobs requiring a great deal of standing or sitting. From sometime in 1965 until March 1972, she worked on the night shift at the Athens-Limestone Hospital as a practical nurse. In order to work on a day shift, petitioner left the Athens-Limestone Hospital on March 13, 1972. Her duties at Huntsville Hospital were the same as they had been before, primarily giving medication to patients and making beds. However, due to increased activity during the day, there was more medicine to administer and more beds to make; thus the work was more strenuous and required more standing and walking.
In June 1974, while engaged in her routine duties, petitioner noticed some redness in one of her ankles. She was not able to relate the condition to any particular activity or incident. Petitioner was treated for this condition by a resident at the hospital until October 23, 1974, when she was referred to Dr. John Howard Lary, Jr., who diagnosed her as having superficial phlebitis of the right lower leg. She continued to work and to receive treatment from Dr. Lary until November 11, 1974, at which time she ceased working upon the instruction of Dr. Lary.
Petitioner's condition has steadily worsened since she has been unemployed. In March 1975 she was taken to the emergency room and admitted to the hospital for treatment for both superficial thrombophlebitis and deep vein thrombophlebitis in both legs. In April 1975 Dr. Lary determined that petitioner is permanently and totally disabled from gainful employment, due to bilateral thrombophlebitis. He said the external cause of petitioner's thrombophlebitis was her duties as a nurse, and that the condition could not have existed for more than three or four months prior to his examination of her in October 1974.
At the trial medical evidence was furnished by two doctors, Dr. Lary and Dr. James H. Rogers. Both testified that thrombophlebitis is a condition in which blood adheres to the wall of a vein, forming a clot, accompanied by inflammation of the surrounding area. Superficial thrombophlebitis refers to the condition in the veins just beneath the surface of the skin; deep vein thrombophlebitis refers to the condition when the veins affected are deeper. A blood clot may form when the wall of a vein has been irritated, or when the flow of blood from the heart through the venous *Page 921 
system is sufficiently slowed. Prolonged sitting or standing can cause the flow of blood to slow so that the condition develops. Some people are more susceptible than others to thrombophlebitis; thus, one person could contract the disease where another under the same circumstances would not.
Petitioner presents six issues for us to decide. The first three question whether there is any legal evidence to support the trial court's finding: (1) that petitioner's thrombophlebitis is not an occupational disease as defined in Title 26, Section 313 (34), Code of Alabama 1940 (Recomp. 1958); (2) that petitioner did not suffer an aggravation of a preexisting condition as envisioned by Title 26, Section 313 (34), Code of Alabama 1940 (Recomp. 1958); and (3) that petitioner's disability does not result from a compensable accident as contemplated by Title 26, Chapter 5, Article 2, Code of Alabama 1940. The fourth question is whether the trial court's findings of fact and conclusions of law comply with Title 26, Section 304. The fifth issue raises the validity of the trial court's allowing into evidence statistics on the incidence of thrombophlebitis as revealed by admissions to the Huntsville Hospital for several years prior to trial. The final issue is whether the trial court erred in overruling petitioner's motion for summary judgment.
The standard of review in workmen's compensation cases is whether there is any legal evidence to sustain the trial court's finding or conclusion or judgment. Mobile PaintManufacturing Co. v. Crowley, 56 Ala. App. 673, 325 So.2d 182
(1975); Glover v. Howell Plywood Co., 50 Ala. App. 22,276 So.2d 608 (1973); Edwards v. City of Huntsville, 49 Ala. App. 498,273 So.2d 475 (1973). Thus, the first issue to be decided by this court is whether there was any legal evidence to support the trial court's finding that petitioner's condition of thrombophlebitis is not an "occupational disease" within the meaning of Title 26, Section 313 (34), and that she did not suffer disablement caused by the contraction of an occupational disease as defined in that statute.
"Occupational disease" is defined in the cited statute as being:
 "[A] disease arising out of and in the course of employment, . . . which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged, but without regard to negligence or fault, if any, of the employer. A disease . . . shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of exposure over a period of time to the normal working conditions of such trade, process, occupation or employment. The term `contraction of an occupational disease' as used herein shall include any aggravation of such disease without regard to the employment in which the disease was contracted. . . ."
Thus, to be occupational the disease must be (1) due to hazards in excess of those ordinarily incident to employment in general, and (2) peculiar to the occupation in which the employee is engaged.
In City of Tuscaloosa v. Howard, 55 Ala. App. 701,318 So.2d 729 (1975), we stated what evidence an employee-plaintiff must show in order to establish that he or she has an occupational disease within the meaning of the statute. The disease must be directly caused by or result from exposure over a period of time to a hazard recognized as peculiar to the normal working conditions of the employee's particular occupation. The disease must in fact be contracted from or aggravated by the nature of the employment, and the contraction or aggravation must arise out of and in the course of the employment. Finally, the disability claimed must result from the disease.
Neither of the two doctors who testified at trial stated that thrombophlebitis is prevalent in or peculiar to the nursing profession. Dr. Lary said in his opinion nurses have an increased risk of contracting the disease because of their prolonged standing or sitting, but that the risk is no greater *Page 922 
than in any other job which requires the same amount of sitting or standing. Dr. Rogers said that thrombophlebitis does not seem to be more prevalent in one occupation than in another, as there is nothing about a nurse's duties which make a nurse more susceptible to the disease than a truck driver, a store clerk, a secretary, or an assembly line worker. He personally had treated a person who held a Ph.D in education, several housewives, several persons in a postoperative stage, several persons taking oral contraceptive pills, and a nurse for thrombophlebitis. Petitioner maintains that thrombophlebitis does not have to be peculiar to the nursing profession in order for her to recover under the occupational disease statute.
The appellate courts of this state have not construed the term "peculiar to the occupation" contained in the statute. Dicta in the Howard case, supra, could be mistaken to establish a definition requiring that the hazard giving rise to the disease be found only within the employee's occupation and in no other. This court did not intend such a restrictive definition. It is a well established policy of this state that the workmen's compensation act is to be liberally construed to accomplish its beneficent purposes; Gilmore v. Rust EngineeringCo., 289 Ala. 46, 265 So.2d 591 (1972) and cases cited. To require that the disease originate exclusively from the particular kind of employment in which the employee-plaintiff is engaged would severely limit recovery under the occupational disease statute and contravene the remedial legislative purpose.
Courts in other jurisdictions have rejected such a restrictive interpretation of the term "peculiar to the occupation." The Connecticut court defined the phrase, as used in its statute, to mean that:
 ". . . the conditions of [the] employment must result in a hazard which distinguishes it in character from the general run of occupations." Glodenis v. American Brass Co., 118 Conn. 29, 40, 170 A. 146, 150 (1934).
This definition has been adopted by the courts of Michigan,Underwood v. National Motor Castings Division, 329 Mich. 273,45 N.W.2d 286 (1951), and Minnesota, Gray v. City of St. Paul,250 Minn. 220, 84 N.W.2d 606 (1957).
Applying the construction to the definition in our statute, we think that in order for a disease to be occupational it must be due to hazards which are (1) in excess of those ordinarily incident to employment in general and (2) different in character from those found in the general run of occupations. To state the matter succinctly, the plaintiff must be exposed by his or her employment to the risk causing the disease in a measurably greater degree and in a substantially different manner than are persons in employment generally.
In the case at bar there was sufficient evidence before the trial court for it to find that persons in employment generally, and even unemployed persons, are exposed to the risk of contracting thrombophlebitis, and therefore that thrombophlebitis is not caused by hazards in excess of those ordinarily incident to employment in general and peculiar to the nursing profession. In addition to the doctors' testimony, Dr. Benjamin C. Johnston, a rehabilitative psychologist who works as a consultant for the Social Security Administration at its disability hearings, testified that in the past two years he had had contact with sixty cases involving thrombophlebitis. In none of those cases were the petitioners nurses.
Petitioner's lawyer even stated at trial:
 "We don't contend that phlebitis is a disease which is exclusively contracted by nurses nor that it is unique to nurses. Of course, we are well aware that there are many people, of many occupations in life who contract thrombophlebitis or phlebitis and we are also well aware that there are many unemployed people who contract it, too. . . ."
Consequently we conclude that there was legal evidence to support the trial court's finding that petitioner's thrombophlebitis is not an occupational disease.
Title 26, Section 313 (34) also provides: *Page 923 
 "The term `contraction of an occupational disease' as used herein shall include any aggravation of such disease without regard to the employment in which the disease was contracted."
Petitioner claims she falls within this provision of the statute in that she had a preexisting susceptibility to thrombophlebitis, due to a proven long history of varicose veins. She claims that aggravation of the varicose veins caused the thrombophlebitis.
Again, there is legal evidence in the record to support the trial court's finding that petitioner's disease of thrombophlebitis was not due to aggravation of a preexisting condition. Petitioner's own doctor testified that there is no established causal connection between thrombophlebitis and varicose veins. Although a person with varicose veins might have a slightly increased incidence of superficial thrombophlebitis, most people with varicose veins do not have the latter disease. Furthermore, there was testimony that walking, one activity required by petitioner's job and of which she complains, aids in the treatment of early stages of thrombophlebitis because it tends to speed the flow of blood through the circulatory system, thereby preventing stagnation in the lower extremities.
Petitioner's third contention, that there is no legal evidence to support the trial court's finding that petitioner did not suffer a compensable accident as contemplated by Title 26, Chapter 5, Article 2, supra, is equally without foundation. This court in the Howard case, supra, traced the history of the term "accident" as used in Article 2, supra, and pointed out that in the early existence of the statute the courts required that the injury be traceable to an event which happened suddenly and violently and was of unusual nature and foreign to the usual occurrences on that job. Howard then noted that more recently the term "accident" has been construed in the context of the effect rather than the event; there is an accident if the result was unexpected and unforeseen and it was caused by the job. The test is:
 "If in the performance of the duties for which he is employed an employee is exposed to a danger or risk materially in excess of that to which people not so employed are exposed, and an injury occurs, such injury may legally be determined to have arisen from his employment and be an accident under the statute. . . ." 55 Ala. App. at 705, 318 So.2d at 732.
It was Dr. Lary's opinion that nurses face an increased risk of incurring thrombophlebitis. However, as already discussed, there was other evidence before the court that the hazard of incurring the disease in the nursing profession is not materially in excess of that to which people not so employed are exposed. Where testimony in workmen's compensation proceedings is conflicting, and there is testimony supporting the trial court's finding, such finding is conclusive.Davis-Day Timber Co. v. Gentry, 54 Ala. App. 385, 309 So.2d 97
(1975). Consequently, we conclude that the trial court's finding on this aspect of the case is supported by legal evidence.
Petitioner's fourth contention is that the trial court failed to make sufficient "findings of fact and conclusions of law" as required by Title 26, Section 304, Code of Alabama 1940 (Recomp. 1958), and that such failure requires reversal. It appears that petitioner is saying that the trial court failed to make findings on issues raised at trial, specifically her susceptibility to the disease, the aggravation of an occupational disease, and the aggravation of a nonoccupational preexisting disease. Petitioner maintains that Pinkney v. JamesB. Clow Sons, Inc., 277 Ala. 648, 173 So.2d 811 (1965), compels reversal where the trial court fails to determine an issue raised by the pleadings.
Although petitioner correctly states the Pinkney decision, there is no merit to her complaint. The pleadings filed by petitioner raised the issue of disability due to an occupational disease and an accident. The trial court made specific findings of fact and conclusions of law as to these issues. The five distinctions made by petitioner *Page 924 
in brief of these issues are not, so far as we can determine, supported by the record before us. We find no error here.
The fifth issue raised by petitioner is that the trial court erred in admitting testimony of Paul B. Miller, medical records director for the Huntsville Hospital, relating to statistics extracted from the business records of the hospital and compiled by the hospital for trial. The evidence was taken from a computer printout showing the number of patients treated at the Huntsville Hospital for thrombophlebitis categorized by occupation.
In a workmen's compensation case the appellate court reviews the judgment of the trial court by writ of certiorari, i.e., the reviewing court will look to see if there are errors of law apparent from the face of the record and will only be concerned with whether or not there is legal evidence to support the findings of fact. Boatwright v. Dothan Aviation Corp., 278 Ala. 142, 176 So.2d 500 (1965). The appellate court will not review technical questions regarding the trial court's rulings on objections to the admission of evidence. Houser v. Young,247 Ala. 562, 25 So.2d 421 (1946); Sloss-Sheffield Steel Iron Co.v. House, 217 Ala. 422, 116 So. 167 (1928). The reason for appellate restraint, given in Woodward Iron Co. v. Bradford,206 Ala. 447, 90 So. 803 (1921), is that there is no statutory provision for setting out the trial court's rulings on admissibility in the findings of the trial judge and therefore these rulings are not part of the record. Thus, we do not reach the question raised by petitioner.
Finally, petitioner claims that the trial court erred in overruling her motion for summary judgment.
A motion for summary judgment may be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, ARCP; Birmingham Television Corp. v. Water Works, 292 Ala. 147,290 So.2d 636 (1974). In the case at bar the pleadings and evidence on file at the time the summary judgment motion was filed shows that a genuine issue of material fact was presented for resolution by the trial court; therefore, the motion was properly overruled.
No reversible error having been argued, the trial court's judgment is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.