This is a workmen's compensation case. From a judgment in favor of the employee the employer appeals.
The dispositive issue on appeal is whether the trial court's finding that the employee sustained a 30% permanent partial disability to the body as a whole with a corresponding 30% loss of earning ability is supported by the evidence. We find that it is and affirm.
The pertinent facts are as follows:
The employee is a high school graduate, having completed his high school education while serving in the U.S. Army. He is thirty-two years old and the father of three children. After discharge from the Army he performed carpentry work and was a "stock room" clerk. Thereafter, he attended Northwest Technical, a trade school located in Hamilton, Alabama, where he studied to be a machinist and tool and die worker. After finishing trade school, he farmed and did tool and die work. The employee then worked in the construction trade for a short time before becoming employed by a mobile home manufacturer to perform the duties of a warehouse foreman.
In approximately November of 1972, he was employed by the employer-on appeal. In December of 1973, while lifting a vise from a bench in the course of his employment, he injured his back. He has not worked any appreciable amount since this injury.
After the injury, in January of 1974, the employee consulted Dr. James Anderson and was hospitalized immediately. Dr. Anderson apparently referred the employee to Dr. Vance C. Roy, a neurological surgeon. While hospitalized, a myelogram was performed and other treatment provided. In July of 1974, the employee was involved in *Page 163 
an automobile accident. Surgery was performed on the employee's back sometime after the automobile accident.
The employee testified that after he was injured on the job and prior to the automobile accident, he was in constant pain; that he did not sleep well; that he could not stand or sit for long periods of time; that he could not lift anything, stoop, or bend without experiencing pain; that his job required him to do all of these things. He could not walk any great distance. He stated he could not do any of the work he performed prior to his injury.
The employee specifically testified that his back was just as painful and his motion just as limited prior to the automobile accident as it was afterwards.
The employee's wife testified that her husband had always been a good worker. She substantiated her husband's testimony as to his limitations.
Dr. Roy testified that in his opinion the employee could have returned to work in June of 1974. Dr. Roy performed the surgery on the employee's back after the automobile accident. As to what degree of the employee's back problem was attributed to the employee's job related injury versus the automobile accident, Dr. Roy testified as follows:
 "Q Now the next problem that we have of course is that we have two accidents involved here. Would there by any way of telling whether one of both of these contributed to the symptoms which he was feeling.
 "A I know of no objective way. To me the implication was that he was better until he had the wreck, but I have seen people get better and then worse again without having a wreck so that is your problem and not for me."
Dr. Roy testified regarding the employee's present percentage of disability as follows:
 "Q Do you think that he was still able to work or perform normal functions.
 "A That depends on what normal is for him. I think that if he were a lawyer he would be in good shape or if he were a shoe salesman or a clerk. It is just my gut feeling about it that this man is not going to be able to go back to lifting things that he lifted before he hurt his back.
 "Q How much permanent physical impairment do you think that he is going to have as a result of this condition.
 "A Well I would say that his permanent physical impairment to the body as a whole would be between 7 to 15% and I just can not get down any closer than that on something like this."
Dr. James Anderson, the other physician who treated the employee and who first saw the employee after his job related injury, testified that he diagnosed the injury received by the employee on the job to be herniated nucleus pulposis. Specifically and pertinently, Dr. Anderson testified as follows:
 "Q Doctor, do you have an opinion as to whether or not this man has been totally disabled from the time you first saw him until today?
"A Yes.
"Q What is that opinion?
 "A My opinion is that he is totally disabled from the time that I saw him until today.
. . . . .
 "Q Have you talked with Dwight Moses and been informed by him, as part of his history, as to what his job consisted of when he got hurt?
"A Yes.
"Q Was that as a tool and die maker?
"A Yes.
 "Q Are you acquainted, Doctor, with the requirements of a tool and die maker as far as the physical activity of the person goes?
"A Yes.
 "Q I believe your brother-in-law owns a tool and die shop, doesn't he? *Page 164 
"A Yes.
 "Q Doctor, do you have an opinion as to whether or not Dwight Moses will ever be able to perform tool and die work?
"A Yes, I have an opinion.
"Q What is that opinion, Doctor?
 "A I don't think he will be able to perform tool and die work because of his injury.
 "Q Alright, basically, Doctor, what kind of limitations and restrictions will the man have to live with? I am talking about in the nature of permanent limitations and permanent restrictions?
 "A Well, I would say that any type of lifting, climbing, bending, stooping, jumping or prolonged ambulation or being on the feet for a long period of time would be prohibitive."
In relation to the effect the subsequent automobile accident had on the employee's injury, Dr. Anderson testified as follows:
 "Q Alright, did he tell you, in some of these subsequent examinations, about a second accident that he had?
"A Yes, he did.
 "Q To what extent do you think that accident affected his condition?
 "A Well, let me answer your question this way: In my opinion, when I saw him on the 29th of January, 1974, I thought he had a ruptured disc between the L4, L5 innerspaces on the left. He had the findings of that. Now, subsequently he had this accident and it was following the second accident that he had his surgery in which they found two discs, I understand, at L4, L5 and also L5-S1. I don't know who could tell you what effect the automobile accident had on this, his overall injuries. I can only say that I know he had one disc before the automobile accident."
Dr. Anderson further testified as follows in relation to the employee's percentage of disability:
 "Q Doctor, do you have an opinion as to a permanent partial impairment rating on this boy?
"A Yes.
"Q What is that opinion, Doctor?
"A As a tool and die worker?
 "Q Give us that first and then give us just an overall impairment rating, if you will.
 "A As far as I know, this is all this man is able to do — a tool and die man — and I would say, in all fairness to him and the requirements of a tool and die worker, I would say 40% would be a fair estimate.
 "Q Now, just a general impairment rating to the body as a whole, regardless of what he attempted to do, is that your opinion — 40%?
"A Yes, as of today, the 1st of May, 1975.
"Q Do you feel that is a permanent disability?
"A Yes. In fact, it could get worse.
"Q It could get worse?
"A Yes.
"Q Alright, that is all."
The criteria for review has been often stated by the Supreme Court of Alabama and this court. This criteria for review clearly requires affirmance of the trial court's decree. As this court stated in B.F. Goodrich v. Martin, 47 Ala. App. 244,250, 253 So.2d 37, 43, cert. denied, 287 Ala. 726,253 So.2d 45:
 "Our review by certiorari does not perform the functions of an appeal. The weight or preponderance of the evidence or whether the finding of fact by the trial court is proper is not before us on review by certiorari. We must accept such finding if it is supported by any legal evidence. . . ."
To this court, there is ample evidence to support the trial court's finding of disability. We do not deem it necessary to set out again the pertinent testimony supporting the trial court's conclusion. Suffice it to say the testimony of the employee, his wife, and at least one physician clearly *Page 165 
shows that the employee is impaired in performing those duties for which he is trained. See Edwards v. City of Huntsville,49 Ala. App. 498, 273 So.2d 475; Colvin v. Lee Turzillo ContractingCo., 54 Ala. App. 401, 309 So.2d 112; Vulcraft, Inc. v.Wilbanks, 54 Ala. App. 393, 309 So.2d 105.
In brief, able counsel for the employer states that the trial court failed to consider the fact that the employee resumed work as a carpenter for approximately six weeks prior to the automobile accident. Tit. 26, § 279 (C)6, Code of Alabama 1940, states:
 "In . . other cases of permanent partial disability . . . the compensation shall be sixty-six and two-thirds percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition . . ."
It is the employer's contention that there could be no finding of permanent partial loss of ability to earn since the employee had drawn weekly wages for approximately six weeks which were greater in amount than those he would have drawn had he not been injured.
Larson's Workmen's Compensation Law, Vol. 2, § 57.21, provides the answer to this contention:
 "It is uniformly held . . . that a finding of disability may stand even when there is evidence of actual post-injury earnings equalling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. . . ."
Accord Goodyear Tire and Rubber Co. of Ala. v. Downey, 266 Ala. 344, 96 So.2d 278. See Bell v. Driskill, 282 Ala. 640,213 So.2d 806. Here the employee has worked for only approximately six weeks of the fifteen month period which elapsed between his initial incapacitation in January of 1974 and the time of trial in May 1975. To this court, such evidence sufficiently rebuts the presumption that his earning capacity is commensurate with the wages he received as a carpenter. The preceding, in conjunction with the other evidence adduced at trial, is sufficient to support the trial court's conclusion with respect to disability.
As might be surmised, the employer additionally argues that the evidence shows that the employee's disability was, in large measure, the result of an automobile accident and not a work related injury.
As seen from the testimony of the employee, Dr. Roy and Dr. Anderson, as set out above, the evidence under our standard of review clearly does not support the employer's contention.
Lastly, the employer argues that the employee refused to have surgery until after the automobile accident and that the trial court erroneously failed to apply the pertinent provision of Tit. 26, § 293, Code of Alabama 1940.
Title 26, § 293, in part reads as follows:
 "If the injured employee refuses to comply with any reasonable request for examination or refuses to submit to medical and surgical treatment and attention, or refuses to accept the medical service which the employer elects to furnish under the provisions of this chapter his right to compensation shall be suspended, and no compensation shall be payable for the period of such refusal. . . ."
The evidence does not support the employer's contention regarding the employee's refusal to have surgery. Representative of such testimony is as follows:
Dr. Roy testified as follows:
 "Q One last thing. I don't know whether this is going to get into the case or not, but in Alabama we have as part of our Workmen's Compensation Law a portion that says that if a person unreasonably refuses medical treatment he waives his right to claim compensation. Was his failure *Page 166 
to do the exploratory surgery any sooner than he did unreasonable, or do you view it as having been a reasonable decision.
"A Not in the least.
 "Q In other words, he was kind of following your instruction to stand it as long as he felt like he could but when you get to the point come on back.
 "A You see, he really got better. He got `well' at least subjectively he did and as well as you can objectively see in this kind of examination.
"Q So it was not unreasonable, his refusal.
"A I don't think that it was unreasonable at all."
The case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.