HOLMES, Judge.
This is a workmen’s compensation case.
The issues are agreed upon by the parties[1] and are as follows:
1. Did the trial court err to reversal in finding that the employee’s skin condition arose out of and in the course of his employment?
2. Did the employee’s refusal of employment offered to him by the employer disen-title the employee to compensation?
We answer both in the negative and affirm.
The testimony reveals that the employee while in the employ of the employer worked with his hands in solutions of “coolant”; that employee developed a severe skin condition; that prior to this employment he had never experienced any allergy or dermatological problem. The employee was seen by a specialist who testified in part as follows:
“A. My record at the time indicates that he had a generalized allergic contact dermatitis, which means that by the time I saw him, even though the history was that it had begun on his arms and hands, he more or less had a generalized reaction, which means it had gotten in the bloodstream or he had become ‘sensitized.’ This is a frequent occurrence with any type of allergic reaction, whether it be a coolant, as he contends, or whether it be poison ivy, for example.
“Q. In layman’s terms, could we say it had spread around on his body?
“A. Yes, in layman’s terms, it had gotten into his bloodstream and spread around, so to speak.
“Q. Was he able to work at that time?
“A. I would have to say no at the time; however, I did anticipate his being *1367 able to return to work at that time..."
The general tenor of the physician’s testimony was that he could not with any degree of certainty explain what was causing the employee’s skin problem. He did, however, testify the condition had worsened.
The tenor of certain testimony of the doctor and of an employee of the employer was to the effect the treatment and diagnosis of the employee was predicated on the fact that the coolant involved was of a certain type, when in fact it was not of this type. However, we additionally find the following testimony by the doctor.
“Q. So in your expert opinion, it is possible that he was sensitized by working in the coolant on the job?
“A. Yes.”
The employee testified, as noted above, that he had never had any skin problem prior to his employment with the employer and prim; to working with the coolant; that his job required him to place his hands in the “coolant”; and that when he first developed the condition he reported it to his foreman and was thereafter sent by the company to the “company doctor.”
With the above before the trial court, a finding of 25% permanent partial disability of the body as a whole was made.
As this court and the Supreme Court of Alabama have stated on numerous occasions on certiorari to review judgments in workmen’s compensation cases, the appellate court does not look to the weight of the evidence as to any fact found by the trial court, but looks to see if there is any evidence to support facts and conclusions found by the trial court. See Vulcraft, Inc. v. Wilbanks, 54 Ala.App. 393, 309 So.2d 105 (1975); 19A Alabama Digest Workmen’s Compensation Key 1940. We do not deem it necessary to set out again the supportive facts as they relate to the issue at hand. Suffice it to say the employee’s testimony and certain testimony of the doctor, as set out above, supports the trial court’s conclusion that the skin condition arose out of and in the course of the employee’s employment.
Title 26, § 279(C)4, Code of Alabama 1940 (1973 Cum.Supp.), reads as follows:
“If an injured employee refuses employment suitable to his capacity, offered to or procured for him, he shall not be entitled to any compensation at any time during the continuance of such refusal unless at any time in the opinion of the judge of the circuit court of the county of his residence, such refusal is justifiable.”
The following testimony by the employee is found in the record:
“Q Weren’t you offered a job on another shift in another department?
“A Yes, sir.
“Q What job were you offered?
“A One was sweeping, and one was on the press, I believe.
“Q The job on the press, would you have been using any coolant on that job?
“A Not to my knowledge, no, sir.
“Q Did you take the job as press operator?
“A No, sir.
“Q Why?
“A It didn’t pay as much as what I was making.
“Q What were you making as a roll grind operator?
“A $3.25 an hour.
“Q What did the press operator pay?
“A $3.05, I believe.”
In addition to the above, another employee of the employer testified that a job was offered to the injured employee and he did not accept this employment. This job was not involved with “coolant.”
The trial court specifically found that the employee was justified in refusing the offer of employment after the injury.
The above quoted statute clearly allows the circuit court to find that the employee was justified in refusing employment. Therefore, the only determination for this court to make is whether the action by the trial court is supported by the evidence.
*1368 Keeping in mind the standard of review, as set out hereinabove, we cannot say the trial court erred.
The appellee-employee in brief cites the following language as contained in Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 325, 20 So.2d 591, 595 (1945):
“[A]s a general rule the mere fact that after the injury the employee received or is offered his former wages or a larger sum will not by itself preclude recovery of compensation under the compensation statutes.
“There are authorities to the further effect that there may be compensation for disability though there is no immediate actual impairment of earning, if the employee’s physical agency has been substantially impaired. The authorities are also to the effect that the fact that after the injury the employee had been taken back as soon as he was able to work and continued in his employment by his former employer is ‘inconclusive’ as against impairment of his earning capacity. Such is the rule declared by the courts of California, Colorado, Kansas, Massachusetts, Montana, West Virginia, Wisconsin and England.
“The reason for the rule stated in Gailey v. Peet Bros. Mfg. Co., 98 Kan. 53, 157 P. 431, is:
“ ‘If this employment relieved the defendant of liability, then any employer can escape liability for compensation by retaining the injured employé and paying him wages, although he may not be able to do as good work after the injury as he did before. An injured em-ployé may not wish to continue to work for the one in whose employ he was injured, and because of his injury he cannot obtain as good wages in another place. The injured employé has a right to compensation for his injury. It does not matter that his employer continues to accept his services and pay him regular wages, unless that employment continues for the entire period for which compensation might be allowed. The act fixed the liability when the employé was injured. That liability can be discharged only in the manner directed by the statute.’ ”
We believe this language is dispositive of the issue, as clearly the evidence is supportive that the employee has some impairment of earning capacity and this is what the trial court found.
The case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P. J., and BRADLEY, J., concur.

. This court would be remiss in not commenting that both the employer and the employee have favored this court with excellent briefs. The briefs are short, concise, and to the point. We are grateful for counsels’ assistance.