400 So.2d 412 (1981)
CHRYSLER CORPORATION, a corporation,
v.
Bonnie Faye HENLEY.
Civ. 2581.
Court of Civil Appeals of Alabama.
June 10, 1981.
*413 Harold F. Herring and Thomas R. Robinson of Lanier, Shaver & Herring, Huntsville, for appellant.
Aubrey O. Lammons of Lammons, Bell & Sneed, Huntsville, for appellee.
BRADLEY, Judge.
This is a workmen's compensation case.
Plaintiff, Bonnie Faye Henley, sought workmen's compensation benefits from her employer, defendant, Chrysler Corporation, for a pulmonary disease caused by continuous exposure to chemical fumes and fiberglass particles while on her job. The trial court found that plaintiff was fifty percent permanently partially disabled to the body as a whole as a result of bronchial asthma contracted during her employment with defendant and awarded benefits commensurate with that finding. Defendant's motion for new trial was overruled and defendant appealed.
The facts show that Mrs. Henley was employed by Chrysler Corporation as a sound system aligner in its manufacture of AM and FM radios from November 11, 1975 to February 16, 1979.
This job required plaintiff to adjust the frequencies on the radios as they passed over an assembly line. Plaintiff's position *414 on the assembly line was within thirty feet of a device known as a wave solder machine. A printed circuit board which was a part of the radios would pass through the wave solder machine where the circuit board would be subjected to a stream of solder, solder flux, and trichloroethylene. Occasionally a board would drop into the trichloroethylene and at such times an employee would have to reach into the tank and retrieve the board. Plaintiff said she had done this several times.
Plaintiff also was required occasionally to pump trichloroethylene from a portable drum into a storage tank attached to the wave solder machine and, in doing so, it was necessary that she place her head in the tank so that she could observe the amount therein so as not to overfill it.
During the time that plaintiff worked for Chrysler Corporation she constantly inhaled the fumes from the solder flux and trichloroethylene.
Beginning in 1977 plaintiff experienced headaches, dizziness, sore throats, coughing and wheezing. At the time of trial plaintiff was experiencing continuous wheezing, periodic coughing, short-windedness, and occasional asthma attacks. Prior to her employment with Chrysler, plaintiff had never suffered from severe, prolonged respiratory problems even though she had worked for an electronics company using chemicals similar to those encountered at Chrysler.
In the early fall of 1978 plaintiff sought medical help for coughing and throat pain and in December of that same year Dr. Griggs performed a laryngostomy, bronchoscopy, and bronchogram on plaintiff. The diagnosis was bronchitis.
In February 1979 plaintiff saw Dr. Huber who reported to defendant's sickness and accident insurance carrier that plaintiff was suffering from bronchial asthma as well as bronchitis. He said that plaintiff could return to work for Chrysler if she were placed in a part of the plant where she would not inhale the noxious fumes previously mentioned. Defendant did not attempt to employ plaintiff in any capacity.
Plaintiff started receiving weekly sickness and accident benefits from defendant's group health insurance carrier in 1979 and was receiving extended disability benefits from the carrier at the time of trial.
Defendant argues here that plaintiff's asthmatic condition was not a disease within § 25-5-110, Code 1975; that her employment did not cause or aggravate this condition; and that her job did not expose her to hazards in excess of those ordinarily incident to employment in general and peculiar to her occupation. Defendant also contends that there is no evidence to support the finding that plaintiff sustained a fifty percent permanent partial disability to the body as a whole, but if there was evidence of a permanent partial disability, plaintiff's benefits would be limited to those injuries suffered within one year of the filing of the complaint.
Defendant says that bronchitis and bronchial asthma are temporary, intermittent breathing disorders and not occupational diseases within the meaning of § 25-5-110, Code 1975.
Section 25-5-110 provides in part as follows:
For the purposes of this article, the following terms shall have the meanings respectively ascribed to them by this section:
(1) Occupational disease. A disease arising out of and in the course of employment... which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged.... A disease ... shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of exposure over a period of time to the normal working conditions of such trade, process, occupation or employment.
Although our courts have never said that bronchitis and bronchial asthma are diseases, other state courts have so held. See Maniscalco v. Pizza Chef, Inc., 17 App. Div.2d 884, 233 N.Y.S.2d 291 (1962); Mayr *415 v. Price, 9 App.Div.2d 801, 192 N.Y.S.2d 752 (1959). But we have said that disease means more than a temporary disorder, that it denotes a serious disorder which has impaired the constitution or left in its wake some organic or chronic effect which has undermined the general health. Life Insurance Co. of Virginia v. Mann, 28 Ala.App. 425, 186 So. 583 (1938), cert. denied, 237 Ala. 253, 186 So. 586 (1939).
The record in the instant case shows that plaintiff's respiratory problems cause her to wheeze almost constantly, that she must take medication for her asthmatic condition, and that she is frequently tired and short-winded. Such problems have certainly undermined plaintiff's general health; hence we conclude that bronchitis and bronchial asthma are diseases within the meaning of § 25-5-110.
Next, defendant argues that plaintiff failed to prove that the noxious fumes she breathed while employed in defendant's plant caused or contributed to her respiratory ailments.
It is axiomatic that an occupational disease is not compensable if it is not caused or aggravated by the nature of the employment. City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (1975). However, if there is evidence to support a trial court's findings that plaintiff's employment caused her respiratory problems, such findings must be upheld here. See Young v. City of Huntsville, Ala.Civ.App., 342 So.2d 918 (1976), cert. denied, Ala., 342 So.2d 924 (1977).
There is evidence in the record that one of plaintiff's doctors reported to defendant's sickness and accident insurance carrier that plaintiff's problems were "due to occupational inhalants" and were "work related." This evidence, coupled with plaintiff's testimony that she had never had any respiratory problems prior to employment with Chrysler, is sufficient to support the trial court's finding that plaintiff's respiratory problems resulted from the work environment at defendant's plant.
Defendant contends, however, that the record contains no evidence that plaintiff's disease was caused by hazards in excess of those ordinarily incident to employment in general and that those hazards were peculiar to plaintiff's occupation, and, therefore, such disease was not an occupational disease within the meaning of § 25-5-110.
[I]n order for a disease to be occupational it must be due to hazards which are (1) in excess of those ordinarily incident to employment in general and (2) different in character from those found in the general run of occupations. To state the matter succinctly, the plaintiff must be exposed by his or her employment to the risk causing the disease in a measurably greater degree and in a substantially different manner than are persons in employment generally.
Young v. City of Huntsville, supra.
We have decided that plaintiff is afflicted with a disease caused by prolonged exposure to fumes emanating from chemical substances present at defendant's plant where she was employed. Therefore, our next inquiry will be whether plaintiff's employment exposed her to risks greater than are encountered in employment generally and whether these risks were peculiar to plaintiff's occupation.
The record evidence shows that plaintiff's job required her to constantly inhale molten solder, solder flux, and trichloroethylene fumes. Prolonged or repeated inhalation of these fumes could and did injure her health. Workers in many other occupations are in no way compelled to inhale these fumes for even a short period of time. Thus, we conclude that plaintiff's employment exposed her to a greater risk of contracting respiratory diseases than workers in other lines of employment.
We now pass to a consideration of defendant's claim that plaintiff's employment did not expose her to the risk of constantly inhaling molten solder, solder flux, and trichloroethylene fumes in a substantially different manner than persons in other occupations. The record in this case does reveal *416 that many workers in other lines of employment frequently come into intermittent contact with products containing solder, solder flux, and trichloroethylene. However, there is no evidence that many employees in other occupations experience prolonged exposure to large quantities of molten solder, solder flux, and trichloroethylene fumes. It follows that the risk to which plaintiff was exposed on a daily basis was substantially different from that encountered by employees in other occupations. Having demonstrated that she was exposed by her employment with defendant to the risk of constantly inhaling solder, solder flux and trichloroethylene fumes "in a measurably greater degree and in a substantially different manner than ... persons in employment generally," plaintiff indeed proved that she had contracted an occupational disease for which the trial court could award her workmen's compensation benefits.
Another contention defendant makes is that the trial court failed to find that plaintiff suffered a fifty percent permanent partial disability to earn a living. Instead the trial court found that plaintiff suffered a fifty percent permanent partial disability to the body as a whole. In Lingo v. Dixie Veneer Co., Ala.Civ.App., 349 So.2d 591 (1977) we held that in the absence of a finding that claimant had suffered a permanent partial loss of ability to earn, there was no basis for an award of benefits. In the case at bar there was no finding that Henley had a permanent partial loss of ability to earn; hence there is no basis for the award of benefits. Thus the judgment contains a fatal defect.
Finally, defendant says that the trial court erred by not limiting plaintiff's recovery of compensation for injury sustained from her employment to that period within one year next preceding the filing of her complaint, i.e., for those injuries sustained from February 11, 1979 (one year prior to filing of complaint) to February 15, 1979 (plaintiff's last day at Chrysler). We cannot agree.
Section 25-5-117, Code 1975, grants to an employee who has contracted an occupational disease one year from the day on which he was last exposed to the hazard causing the disease to file a claim for workmen's compensation benefits. Said section does not limit or even purport to limit the amount of compensation an injured employee may be entitled to receive from his employer to that portion of the disabling disease accruing in the period of one year next preceding the filing of the complaint and the date of last exposure to the hazards causing the disease. An employee seeking workmen's compensation benefits is entitled to all of the benefits permitted by law regardless of the date of filing of his claim within the statutory period. There is no apportionment of benefits in a workmen's compensation case such as was sanctioned in Garren v. Commercial Union Insurance Co., Ala., 340 So.2d 764 (1976) and Garrett v. Raytheon Co., Ala., 368 So.2d 516 (1979). The cited cases involved tort actions, not workmen's compensation actions, and are not apt authority for the contentions of defendant.
For the error noted above, the judgment is reversed and the cause remanded.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
HOLMES, J., concurs.
WRIGHT, P. J., concurs specially.
WRIGHT, Presiding Judge, concurring specially.
I concur specially in this case. In the beginning of our consideration of this case and after oral argument, I had doubts as to whether the facts brought this plaintiff's claim within the Occupational Disease statute or whether it was subject to the "accident" provisions of Article 3 of the Workmen's Compensation Law. If plaintiff's disease was accidental, as we have come to interpret the term "accident" in cases such as Kane v. South Central Telephone Co., 368 So.2d 3 (Ala.1979); Young v. City of Huntsville, 342 So.2d 918 (Ala.Civ.App. 1976); City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (1975); B. F. *417 Goodrich v. Martin, 47 Ala.App. 244, 253 So.2d 37 (1971), it could not be an occupational disease, for the last sentence of § 25-5-110(1) says: "The term `occupational disease' shall not include accidents within the meaning of Articles 3, 5 and 7 of this chapter."
I would have no difficulty in categorizing plaintiff's bronchitis as an accident, even though it resulted from a long term exposure to chemicals or gases. This is so even though the court in Kane indicated a continued adherence to the "sudden and violent" definition of an accident as followed in the case of Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530 (1937). The court distinguished its holding in Kane from that of Gentry because of the brevity of Kane's exposure to the paint fumes. I submit that if the job causes an injury or unexpected disease whether from brief or extended exposure it should be compensable as an accident. Otherwise we must determine "accident" according to some scale of time of exposure or suddenness of onset.
I consider that the occupational disease statutes, by definition and reason, relate to a particular occupation or industry. Each of the specific occupational diseases provided by statute relates to a general classification or occupation, i.e., coal miners, textile workers, radiation workers, and workers exposed to dust and silica regularly and peculiarly as an incident of their job. §§ 25-5-140 to 203. Even firemen are regularly exposed as a general group to the conditions contributing to heart disease. § 11-43-144. I do not believe even the general definition of occupational disease contained in § 25-5-110 was intended to apply to one worker employed on an assembly line who is exposed to an element or a condition not common to his fellow employees, which causes him to develop a common disease such as bronchitis.
I concur in the result because there is proof that plaintiff developed a job-caused disease and therefore it should be compensable. Whether classified as an accident or occupational disease, the claim was filed as an occupational disease claim and was tried on that basis. I would not deny compensation because the claim should have been filed as an accident. I would reverse on the claim as filed and return the case to the trial court for reconsideration of whether there was a compensable accident. A workmen's compensation claim should not be denied because of claiming under the wrong section of the law. The majority disagreed with my view. Because the evidence supports compensation, I agree with the result of the majority.