437 So.2d 1294 (1983)
Judy DODSON
v.
ATRAX DIVISION OF the WALLACE-MURRAY CORPORATION.
Civ. 3358.
Court of Civil Appeals of Alabama.
April 6, 1983.
Rehearing Denied May 4, 1983.
Certiorari Denied September 30, 1983.
Jack Drake, of Drake, Knowles & Pierce, Tuscaloosa, for appellant.
Olin W. Zeanah and Wilbor J. Hust, Jr., of Zeanah, Donald & Hust, Tuscaloosa, for appellee.
Alabama Supreme Court 82-768.
HOLMES, Judge.
This is a workmen's compensation case.
*1295 The employee-claimant appeals from a decree which denies her any compensation under the workmen's compensation statutes.
Viewing the record with the attendant presumptions, the following is shown: The employee worked for the defendant-employer, Atrax Division of Wallace Murray Corporation (hereafter Atrax) from May 14, 1979 to September 18, 1981. During her employment, the employee worked as a furnace operator for Atrax, a manufacturer of hard cutting tools. Atrax uses hazardous substances, tungsten carbide and cobalt, in the manufacturing process. Even though Atrax has filtering systems to filter particles of dust from the atmosphere inside the plant, Atrax was cited by the Occupational, Safety and Health Administration (OSHA) for a slight over exposure of cobalt particulate matter to two workers in the plant. In the fall of 1981, OSHA investigated the plant and found the level of cobalt particulate matter to be below the OSHA standard.
Exposure to tungsten and cobalt is commonly associated with two hard metal diseases. The less serious of these two is a bronchitic or an asthmatic response. The metal dust is inhaled, and may create an allergy-like response with obstruction of the airways as a result.
A careful review of the medical testimony taken as a whole and read in the proper context revealed the following:
In the fall of 1981, the employee was suffering from bronchitis, and was seen by Dr. Rice. At that time, Dr. Rice's diagnosis was that the employee was suffering from asthma and bronchitis, or obstruction to her airways caused by exposure to tungsten carbide. Her condition would clear up on weekends, and cleared up after she ceased to work at Atrax. Soon after the bronchitis began to subside, the employee developed hemoptysis, or coughing up blood. She was then hospitalized due to the hemoptysis. Tests failed to indicate a reason for the hemoptysis, which continued even after the bronchitis cleared up.
The employee was referred to Dr. Bailey, a lung specialist. Under Dr. Bailey's supervision, a lung biopsy, major surgery, was done, and during this surgery an area of old scar tissue was removed. The area of scar tissue was not work-related. The hemoptysis cleared up after surgery.
Dr. Rice testified that while he could not be 100% certain, he felt the hemoptysis was related to the bronchitis. "I don't think that Ms. Dodson would have had the difficulty with hemoptysis that she had, had it not been for exposure to tungsten carbide. And I base that on the severe bouts of coughing that she used to get with exertion that seemed to precipitate the episodes of hemoptysis."
Dr. Bailey testified that when he examined the employee in February of 1982, the bronchitis had cleared up, and was not the cause of the hemoptysis at that time. But Dr. Bailey did testify he could not rule out bronchitis resulting from exposure to tungsten carbide, nor could he rule out bronchitis as a cause of the hemoptysis. "I cannot say that she didn't have an obstructive airways syndrome [hard metal disease] at the time she went to work that was gone by the time we saw her because she reported symptoms that were consistent with bronchitis." Dr. Bailey said that bronchitis was a "very nonspecific thing," and "might have been there unrelated to her exposure, aggravated by exposure, or even caused by exposure [to tungsten carbide]."
Dr. Bailey testified that the bronchitis could have irritated the scar inside her lung, causing the hemoptysis. Although stating the cause of the hemoptysis was "debatable," Dr. Bailey said it would be "a reasonable speculation" that the bronchitis triggered the hemoptysis.
Dr. Rice testified the employee could not work at Atrax, nor could she work in an environment containing any dust or industrial irritants. Although he testified she suffered no permanent disability, the employee should not work around dust, fumes, or irritants because her previous condition *1296 "sensitized" her airways. Once the airways have been sensitized, the airways tend to stay sensitized so that work around chemicals, dust, or fumes would cause more difficulty.
Dr. Bailey also testified the employee could no longer work at Atrax, and it "would be desirable for her to avoid" work in any similar environment.
In uncontradicted testimony, a vocational expert said that "looking at the limitation of her not being able to tolerate a contaminated environment for whatever reason," the employee suffered an earning disability of 80% to 82%. A person who could not tolerate a "contaminated environment" could not work in any of the production industries in the employee's area.
The trial court, in its finding of facts, stated:
"The Court finds that in September and October of 1981 Ms. Dodson was suffering from bronchitis. However, the Court finds that the plaintiff did not prove to the Court's reasonable satisfaction that this bronchitis was the result of her exposure to any condition at Atrax. The Court further finds that the bronchitic condition has completely cleared and at the present time the plaintiff is not suffering from any bronchitis, asthma, or any obstructive airways disease...."
"The Court further finds that none of the plaintiff's allergies or other medical problems ... were caused by her exposure to tungsten carbide or cobalt or any condition at Atrax and, therefore, the plaintiff's alleged medical ailments did not arise out of and in the course of her employment at Atrax."
The trial court held that the employee is not entitled to recover workmen's compensation benefits under any provision of the Alabama Workmen's Compensation Act.
From this order, the employee appeals, contending she did develop an occupational disease as a result of her exposure through her employment to toxic, hazardous substances, and that the trial court's contrary finding was devoid of any factual basis. She further contends her occupational disease caused a severe permanent impairment to her ability to earn a living, and she is entitled to compensation.
At the onset, we note the standard of review in a workmen's compensation case is very narrow. The Workmen's Compensation Act in Alabama Code § 25-5-81(d) (1975) provides for review by certiorari. On appeal, review of a workmen's compensation case is limited to questions of law, and to examination of the evidence to determine if there is any legal evidence to support the findings of the trial court. E.g., Agan v. Union Foundry Co., 404 So.2d 71 (Ala.Civ. App.1981). We have considered the evidence and the trial court's findings, and we have concluded that there is no reasonable view of the evidence that supports the conclusion of law expressed by the learned trial judge that the "disease" did not result from conditions to which she was exposed at work.
Dr. Rice testified the bronchitis was work related, was probably related to the hemoptysis, and certainly prevented her return to work at Atrax, and at any similar industrial environment. Dr. Bailey, who saw her after the initial bronchitis had cleared, did not dispute Dr. Rice's conclusions. Dr. Bailey only said he did not know for certain the cause of either the bronchitis or the hemoptysis, but that Dr. Rice's conclusions were reasonable. Dr. Bailey agreed the employee could not work at Atrax, and probably should not work in a similar industrial environment.
One doctor said the bronchitis was workrelated. The other doctor, who had not examined her at the time she suffered the bronchitis, said he could not say what caused it, but he did not dispute the first doctor's testimony. Therefore, there is no "conflict" as such in the medical testimony. See Hightower v. Brammall, Inc., 435 So.2d 1295 (Ala.Civ.App.1982). Cf. Dan River Mills, Inc. v. Foshee, 365 So.2d 1232 (Ala. *1297 Civ.App.1979), which discusses uncertainty in the state of the art in medical causation.
We fail to see how the uncertainty as to cause of a doctor who did not examine the employee until the bronchitis had cleared can support the trial court's finding. This is especially true in light of the fact he did not dispute Dr. Rice's diagnosis and found it "reasonable." See Hightower v. Brammall, Inc., supra.
Furthermore, it is hardly material whether the employee's physical response to the work environment was caused by the job or was pre-existing but activated or aggravated by the job. Hightower v. Brammall, Inc., supra. We held in Newman Brothers, Inc. v. McDowell, 354 So.2d 1138 (Ala.Civ. App.1977), cert. denied, 354 So.2d 1142 (Ala. 1978), that the fact of a pre-existing disease did not affect an award of compensation if the job combined with the disease to produce injury or death.
Dr. Rice testified that if the employee already had bronchitis that exposure to the metal dust would have aggravated her condition. Dr. Bailey said "she had symptoms of a problem that would have been aggravated by that [work environment.]"
We hold the court erred in finding the employee suffered no compensable disability.
In order for her to recover under the occupational disease portion of the Workmen's Compensation Act, she must prove the disease arose out of and in the course of employment. Ala. Code § 25-5-110 (1975). It is axiomatic that an occupational disease is not compensable if it is not caused or aggravated by the nature of the employment. Chrysler Corp. v. Henley, 400 So.2d 412 (Ala.Civ.App.1981). In order for a disease to be occupational it must be due to hazards which are (1) in excess of those ordinarily incident to employment in general and (2) different in character from those found in the general run of occupations. To state the matter succinctly, the employee must be exposed by his or her employment to the risk causing the disease in a measurably greater degree and in a substantially different manner than are persons in employment generally. Chrysler Corp. v. Henley, supra.
In the instant case, there is medical testimony which is not directly contradicted that the bronchitis and resulting sensitization of the airways resulted or were aggravated from exposure to the hazardous substances in the work environment. Furthermore, bronchitis and lung ailments are frequently found in people working in environments with tungsten carbide. The exposure to the metal dust over a period of time causes the body to react to the dust. Other Atrax employees have been treated for similar symptoms as the employee suffered.
While we have previously recognized that bronchitis and bronchial asthma are occupational diseases within the meaning of § 25-5-110, Chrysler Corp. v. Henley, supra, the evidence here is that the employee does not presently suffer from bronchitis. However, in undisputed testimony Dr. Rice explained the bronchitis sensitized her airways leaving her more susceptible to bronchitis and other obstructive airway diseases. It is this remaining sensitivity and susceptibility which has left her with an earning impairment. In other words, she has an "allergy" which prohibits her from working at Atrax, or any similar industrial environment.
In order for her to recover under § 25-5-110, we must be prepared to say this residual sensitivity falls within the definition of an occupational disease. Under the code provision, an occupational disease is one which is more than temporary, one which denotes a serious disorder which has impaired the constitution or left in its wake some organic or chronic effect which has undermined the employee's general health. Chrysler Corp. v. Henley, supra.
In Health-Tex v. West, 401 So.2d 88 (Ala. Civ.App.1981), a garment factory worker who developed acute allergic dermatitis *1298 from the cloth materials she worked with was found to be permanently and totally disabled. We held there that disability in this sense relates to the inability to perform the work of one's trade or inability to obtain reasonably gainful employment. Allergies or allergenic reactions have been the basis for recovery in Albertville Nursing Home v. Upton, 383 So.2d 544 (Ala.Civ.App. 1980); Federal Mogul Corp. v. Taylor, 345 So.2d 1366 (Ala.Civ.App.1977); B.F. Goodrich Co. v. Martin, 47 Ala.App. 244, 253 So.2d 37, cert. denied, 287 Ala. 726, 253 So.2d 45, 46 (1971).
We are therefore prepared to hold in this case that the residual effect of the employee's bronchitis amounted to an occupational disease because the resulting sensitivity impaired her earning ability, and left her suffering with a "chronic effect." We therefore reverse and remand for proceedings not inconsistent with the above.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.

On Application for Rehearing
HOLMES, Judge.
The employer, through able counsel, contends in brief in support of its application for rehearing that a certain portion of this court's opinion is "misleading."
While this court does not necessarily agree with the employer, in deference to all concerned, the following is deleted: "Even though Atrax has filtering systems to filter particles of dust from the atmosphere inside the plant, Atrax was cited by the Occupational, Safety and Health Administration (OSHA) for a slight over exposure of cobalt particulate matter to two workers in the plant. In the fall of 1981, OSHA investigated the plant and found the level of cobalt particulate matter to be below the OSHA standard."
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P.J., and BRADLEY, J., concur.