FRANK GLODENIS *vs.* THE AMERICAN BRASS COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 7th, 1933—decided January 3d, 1934.

*William J. Larkin, Jr.,* for the appellant (defendant).

*Clayton L. Klein,* for the appellee (plaintiff).

MALTBIE, C. J. This case was heard by the commissioner of the second compensation district acting for the commissioner of the fifth compensation district, who held himself disqualified. The acting commissioner found that the plaintiff was permanently and totally incapacitated by reason of lead poisoning resulting from his employment by the defendant as a caster in its factory at Waterbury and awarded him compensation. The defendant appealed to the Superior Court, assigning as reasons that the acting commissioner erred in refusing to consider himself disqualified, and in finding that the plaintiff was totally instead of partially incapacitated, that the amount of the plaintiff's average weekly earnings was as stated in the award, that the plaintiff was suffering from a compensable disease, that he had incurred lead poisoning while working for the defendant, and that he had filed a claim for compensation within the time allowed by statute. Later, after a motion seeking many changes in and additions to the finding had been denied by the commissioner, the plaintiff filed additional rea-

sons of appeal based upon the denial of that motion; and in them it also claimed that the commissioner had refused to hear testimony as to certain matters necessary to a fair determination of the case, particularly as to air tests in the shop where the plaintiff was employed which it claimed would show the lead content of the air, and certain testimony which it claimed would show that in other shops of the defendant in places outside Waterbury there had been no known cases of lead poisoning except perhaps one; and it also reasserted the claim made in the original reasons of appeal that the commissioner had shown himself disqualified to hear the case and had erred in denying a motion for a rehearing before another commissioner.

The trial court, after hearing the appeal, filed a memorandum in which it carefully and in detail reviewed the various claims of the plaintiff, granted a number of paragraphs of the defendant's motion to correct, including one striking out the commissioner's finding as to the average weekly earnings of the plaintiff, and denied others, in particular that attacking the commissioner's finding that the plaintiff was suffering from lead poisoning; stated its conclusions that the commissioner had not shown himself disqualified to hear the case, that he had acted properly in refusing to hear the testimony as to the lack of cases of lead poisoning in shops of the defendant outside Waterbury but that he should have heard the evidence as to the air tests in the shop where the plaintiff was employed; and held insufficient to uphold the award, in the absence of the facts upon which it was based, the general conclusion of the commissioner that the lead poisoning from which the plaintiff was suffering was acquired under such circumstances as to constitute a compensable injury which arose out of and in the course of his employment. The memorandum concluded with a

statement that the appeal was sustained and the case remanded to the commissioner who heard it, for further proceedings in accordance with the terms of the memorandum, citing *McCulloch* v. *Pittsburgh Plate Glass Co.*, 107 Conn. 164, 171, 140 Atl. 114, wherein we held that when the finding of a commissioner is rendered, by correction, insufficient to permit an intelligent and just decision of the case, it should be remanded for such further finding as will permit a proper determination of the rights of the parties.

The judgment followed in general the memorandum of decision; it corrected the finding to accord with it; it struck out the paragraph in which the commissioner stated his conclusion that the lead poisoning was acquired under such circumstances as to constitute a compensable injury which arose out of and in the course of the plaintiff's employment; and it remanded the case for an explicit finding of facts upon which the commissioner had based this conclusion, for the taking of further testimony necessary to determine the average weekly earnings of the plaintiff, for the hearing of the evidence as to the air tests in the factory where the plaintiff was employed, and for such further action and modification of the award, if any, "as the conclusions of the acting commissioner may require in the light of the evidence so heard by him;" and it remanded the case to the acting commissioner who heard it. From this judgment the defendant has appealed. It has assigned as error the refusal of the trial court to correct the finding in every respect in which it did refuse to do so, the refusal to hold that the commissioner erred in not hearing evidence as to the lack of cases of lead poisoning in other shops of the defendant outside Waterbury, the action of the trial court in remanding the case to the same commissioner who heard it and its refusal to uphold the defendant's claim that

the commissioner had disqualified himself; and it also assigned in various ways that the trial court erred in sustaining the conclusion of the commissioner that the plaintiff was suffering from lead poisoning and that this lead poisoning was a compensable injury which arose out of and in the course of his employment by the defendant.

Fundamentally the position of the defendant upon this appeal is that, upon the evidence which was heard by the commissioner, the trial court ought to have made certain changes in and additions to the finding beyond those which it did make and which would establish that the plaintiff was not entitled to recover compensation, and that, upon the corrections made by it and by this court, judgment should be rendered sending the case back to the commissioner with direction to dismiss the claim. *Thompson* v. *Twiss,* 90 Conn. 444, 446, 97 Atl. 328; *Santos* v. *Publix Theaters Corporation,* 108 Conn. 159, 142 Atl. 745. The maxim, *interest reipublicae ut sit finis litium,* has an application to proceedings for workmen's compensation. Indeed, it is no doubt often true that the interests of a claimant are best served by a termination of the proceedings even though it be adverse to him. But we do not approach compensation proceedings in quite the same way we do ordinary court cases, and even though upon a case presented upon an appeal a claimant has failed to establish his right to compensation, if it appears reasonable to believe that upon a further hearing he may be able to do so, the court may remand the case for further proceedings rather than for a dismissal of the claim. *Cormican* v. *McMahon,* 102 Conn. 234, 238, 128 Atl. 709; *Callahan* v. *Schollhorn Co.,* 106 Conn. 211, 215, 137 Atl. 642; *Howe* v. *Watkins Brothers,* 107 Conn. 640, 647, 142 Atl. 69. Where a finding has been so corrected as to destroy the basis

of an award, whether a final decision of the case should be made upon the finding as corrected or further proceedings had, presents a matter for the determination of the court in the exercise of a sound discretion.

In the present case we cannot upon the evidence hold that the trial court erred in refusing to strike from the finding the fact that the plaintiff was suffering from lead poisoning. As regards the question whether that lead poisoning constituted an occupational disease within the terms of the compensation law, which arose out of and in the course of the plaintiff's employment by the defendant, we cannot, upon the basis of the commissioner's finding as corrected by the trial court or as we might further correct it, hold it so clearly established that the plaintiff has no right to recover that we can say that the trial court erred in remanding the case for further proceedings. Neither the trial court nor this court could add facts to the finding except those brought before it by the appellant and then only those which were admitted or undisputed, whereas the commissioner upon a rehearing may well find other facts not now claimed or which were proven merely by the weight of evidence. Upon the finding as it may ultimately be made by him the situation presented may be very different from that of which we could take cognizance upon this appeal. The changes in the commissioner's finding made by the trial court were sufficient to justify the conclusion that the case should be remanded to the commissioner for further hearing, but no changes which could be made in it upon the appeal are such that the trial court was required, as matter of law, to remand the case with direction to the commissioner to dismiss the claim.

The terms of the remand in this case do not mean that the commissioner upon a rehearing will be restricted as regards hearing further testimony solely to

those matters as to which the judgment contains specific directions, and must make his further finding upon the basis of the testimony already heard supplemented by that further evidence. The court did not, as in *Santos* v. *Publix Theaters Corporation, supra,* simply remand the case for the commissioner to enter an award upon the finding as corrected by the court. Where changes in the finding in a case tried to the court are made upon appeal and they are so serious as to invalidate the judgment, a new trial is directed. *Nichols* v. *Manchester,* 82 Conn. 619, 74 Atl. 935; *Lowe* v. *Hendrick,* 86 Conn. 481, 483, 85 Atl. 795; *Haugh* v. *Kirsch,* 105 Conn. 429, 433, 135 Atl. 658. The remand of a compensation case to the commissioner for a further finding and award thereon, as in *Cormican* v. *McMahon,* 102 Conn. 234, 237, 128 Atl. 709, and *Louth* v. *G. & O. Mfg. Co.,* 104 Conn. 459, 133 Atl. 664, does not mean that such further finding must necessarily be based solely upon the evidence already heard. The greater latitude allowed compensation commissioners in procedural matters would no doubt justify, upon such a remand, the consideration of the evidence already offered without recalling the witnesses. *Plodzyk* v. *Connecticut Coke Co.,* 116 Conn. 297, 299, 164 Atl. 636. But in the exercise of a sound discretion the commissioner may properly require a rehearing, at least as far as regards issues which upon appeal the court finds were not sufficiently presented by the original finding; or he may hear evidence supplemental to that offered at the original hearing and make his finding upon the basis of all the evidence so before him.

In the case before us the trial court found that the commissioner improperly refused to hear the evidence as to tests made of the air in the defendant's factory and the judgment contains a direction to him to hear

this evidence. If a sufficient basis is established for the admission of this evidence and it is offered and believed by the commissioner it might have a substantial bearing upon two of the main issues in the case, the question whether the lead poisoning from which the plaintiff was suffering constituted an occupational disease and whether it arose out of and in the course of his employment by the defendant. That evidence must be considered not apart from the other evidence in the case but together with all the evidence relative to those issues taken as a whole. *State* v. *Suffield & Thompsonville Bridge Co.*, 82 Conn. 460, 74 Atl. 775. It may very well be that upon the evidence which the commissioner will have before him upon the remand of the case, the findings he will make will be very different from those which he has already made or which upon the basis of the evidence now in the record the trial court has made by the correction of the present finding.

No good purpose would be served by our considering upon this appeal in detail the various further changes and corrections in the finding which the defendant seeks. The only matters presented which require consideration are certain procedural questions. Certain of these grow out of the claim of the defendant that the commissioner had shown himself in the course of the hearing disqualified to proceed further with it. The matter arose in a discussion between the commissioner and counsel of an objection to a question of a medical expert offered by the plaintiff to show the causal connection between the lead poisoning from which the plaintiff was suffering and the conditions of his employment. During this discussion defendant's counsel suggested the absence of any evidence thus far in the case as to the lead content in the air of the factory where the plaintiff was working. The commissioner in the course of the ensuing colloquy stated that he would

have serious doubt as to the probative value of any such evidence. Thereupon defendant's counsel claimed that the commissioner was disqualified to proceed further with the case and moved that it be referred to another commissioner. The fact that the commissioner did not then hold himself disqualified and refuse to hear the case further is not now of moment, because the issues to which the evidence, if admitted, would have been relevant, are under the judgment to be reheard. The same matter is, however, presented by a claim of the defendant presented upon this appeal, that the Superior Court was in error, because of this occurrence, in remanding the case for further proceedings to the same commissioner who heard it before.

The statute gives to each commissioner jurisdiction of all claims for compensation arising within the compensation district for which he is appointed, and provides that, in case a commissioner is disqualified or temporarily incapacitated from hearing any matter, he may designate some other commissioner to hear and decide it, and such other commissioner shall have the same jurisdiction and powers as the commissioner appointed for the district. General Statutes, § 5242. There is no power in the Superior Court to determine what commissioner shall hear and decide a matter upon the remand of a case. The finding and award in this case states that the commissioner who heard it was acting for the commissioner appointed for the district in which the claim arose, who was disqualified to hear it, and we must assume that the acting commissioner had been properly designated. Under the statute he thereby took jurisdiction to hear and decide the case, which would include all proceedings until its final determination. The trial court had no other course open except to remand the case to him.

It does not follow that he must of necessity rehear it.

While the statute is silent as to the situation which would be presented should a commissioner for one district who had been designated to hear and decide a certain matter in another district find himself disqualified, the fair spirit and intendment of the statute is that in such a case, he might decline to act further and it would then be the duty of the commissioner for the district in which the claim arose to designate another commissioner to act. We do not find in the episode anything which can be regarded as ground for disqualification of the acting commissioner as matter of law. Such doubt as the commissioner expressed in regard to the probative value of testimony, which was not even offered at the time, might very well have been removed when the method of making the air test was explained upon the witness stand, and the burden which was thereby imposed upon the defendant to satisfy the commissioner of the probative value of testimony of an unusual nature was no different than that which ordinarily rests upon a party to an action in similar situations. See *Wilson* v. *Hinkley,* Kirby, 199, 201; *McEwen* v. *Occidental Life Ins. Co.,* 172 Cal. 6, 11, 155 Pac. 86; Opinion of Frear, C. J., in *Ex parte Higashi,* 17 Hawaii 428, 443. The same considerations apply, however, to a compensation commissioner in hearing and deciding a claim as apply to a judge. He should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him. The record makes it plain that the defendant regarded the evidence it desired to offer as to the lead content of the air in the factory as of very great importance in the presentation of the case. And if the acting commissioner feels that he is not reasonably open to persuasion as to the probative value of such evidence we are sure

that he will decline to proceed further with the matter.

The plaintiff became incapacitated in December, 1930. The law in effect at that time would therefore determine his right to recover. *Rossi v. Jackson Co.*, 117 Conn. 603, 169 Atl. 617. The Workmen's Compensation Law as it then stood, and as it now stands, permitted a recovery of compensation for incapacity resulting from an occupational disease and defined such a disease as one "peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such." General Statutes, § 5223. This definition does not require that a disease, to be within the definition, should be one which arises solely out of the particular kind of employment in which the employee is engaged, nor that it should be due to causes in excess of the ordinary hazards of that particular kind of employment. Otherwise the definition would exclude most diseases; lead poisoning, for example, is not an ordinary incident of employment in general but arises particularly out of those processes in which lead is used and occurs in a number of kinds of employment, but for that reason it is not to be held to be outside the definition. The phrase "peculiar to the occupation" is not here used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations; see Oxford Dictionary; Funk & Wagnalls Dictionary; and the phrase "employment as such" means employment in general. To come within the definition an occupational disease must be a disease which is a natural incident of a particular occupation, and must attach to that occupation a hazard which

distinguishes it from the usual run of occupations and is in excess of that attending employment in general. See *Industrial Commission of Ohio* v. *Roth,* 98 Ohio St. 34, 38, 120 N. E. 172; *Victory Sparkler & Specialty Co.* v. *Francks,* 147 Md. 368, 379, 128 Atl. 635; *Peru Plow & Wheel Co.* v. *Industrial Commission,* 311 Ill. 216, 221, 142 N. E. 546.

The burden rested upon the plaintiff to show that his incapacity resulted from an occupational disease so defined. That involved an inquiry into the conditions characteristic of the occupation in which he was engaged, that is, such casting as that carried on in the defendant's factory. Evidence that lead poisoning would not naturally result from that particular kind of employment and that the hazard from it in that employment was not beyond that incident to employment in general would be proper. The fact that there were no known cases of lead poisoning among casters in other factories of the defendant where the same kind of work was being carried on as in that at Waterbury would be relevant and material. It may be, as the defendant claims, that the broad ruling of the commissioner in refusing to hear the testimony of the lack of lead poisoning in the other factories precluded him from showing that casters in them were engaged in the same kind of occupation as those in the factory at Waterbury. However that may be, the defendant in offering the evidence failed to make clear the purpose which it now claims, that is, to show that lead poisoning was not an occupational disease as regards the occupation in which the plaintiff was employed. We cannot therefore say that the trial court was in error in concluding that the commissioner did not act improperly in refusing to hear the testimony.

The transcript of the proceedings before the commissioner as printed in the record is cumbered with many

pages made up of arguments and colloquies between counsel and with the commissioner which serve no purpose, and greatly increase the expense and the burden placed upon the whole machinery of the courts. With wearying repetition we call attention to the duty which rests upon all concerned in the preparation of a record, and not least upon counsel, to see that extraneous matter is not made a part of it.

There is no error.

In this opinion the other judges concurred.