0667

MOHASCO CORPORATION, DIXIANA MILL DIVISION, Employer, and Twin City Fire Insurance Company, Carrier, Petitioners v. Mable Hayes RISING, Employee and Margaret Louise Page, Employee, Respondents. Appeal of MOHASCO CORPORATION, DIXIANA MILL DIVISION.

(345 S. E. (2d) 249)

Court of Appeals

---

[1] After the trial of this action, S. C. Code Ann. § 15-5-200 (1976) was repealed by Act No. 100 of 1985. See Rule 19, SCRCP.

*Coleman, Aiken & Chase, Florence, Constangy, Brooks & Smith,* and *R. W. Dibble, Jr.,* of *McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble,* Columbia, *for appellant.*

*Kenneth M. Suggs,* Columbia, and *James E. Lockemy,* of *Green, Lockemy & Bailey,* Dillon, *for respondent.*

Heard Jan. 27, 1986.

Decided March 31, 1986.

Reheard May 19, 1986.

Goolsby, Judge:

In these consolidated worker's compensation cases, Mohasco Corporation appeals awards of total disability benefits made by the South Carolina Industrial Commission to

two former Mohasco employees, the claimants Mable Hayes Rising and Margaret Louise Page. The Industrial Commission in an evenly divided vote affirmed the Hearing Commissioner's findings that both claimants were totally and permanently disabled as the result of an occupational disease within the meaning of the Occupational Disease Act. *See* South Carolina Code of Laws §§ 42-11-10 *et seq.* (1976). The circuit court affirmed the Industrial Commission. We reverse and remand each case for further proceedings.

Rising, a smoker, and Page, a nonsmoker, began working at Mohasco's Dixiana Mill in Dillon, South Carolina, in 1954 within months of each other. They worked in the same area of the textile mill and performed similar jobs.

From 1954 until approximately 1960, Dixiana Mill manufactured carpet using pure cotton or cotton and synthetic blends. Since 1960, however, the mill has used only synthetic fibers, nylon and rayon, to manufacture carpet.

Throughout the period of their employment at Dixiana Mill, textile dust and lint were continuously visible in the air at the claimants' work stations during the carpet manufacturing process and were particularly evident when their machines were "blown off." Dust and lint frequently got into their hair and clothing.

Each claimant has lived in a rural setting her entire life unexposed to any extraordinary dust, lint, and chemicals, except at Dixiana Mill.

Neither claimant suffered any respiratory problem until she went to work at Dixiana Mill. In the years that followed, each claimant began experiencing breathing difficulties while at work. They were able to obtain relief only by breathing outside air. Their breathing problems worsened over the years.

Both claimants worked continuously at the mill for 26 years until lung problems forced them to quit in May, 1980. Neither claimant has worked since then.

After leaving Mohasco's employ, each worker applied for worker's compensation benefits claiming in an amended Form 50 she was entitled to compensation under the Occupational Disease Act.

The Industrial Commission found that both claimants suffer from chronic obstructive lung disease and are totally and permanently disabled.

On appeal, Mohasco questions the Industrial Commission's findings that each claimant's disease is an "occupational disease," as that term is defined by Section 42-11-10.

Neither the Supreme Court nor this court has construed the first paragraph of Section 42-11-10. This paragraph defines the term "occupational disease" to mean

> a disease arising out of and in the course of employment which is due to hazards in excess of those ordinarily incident to employment and is peculiar to the occupation in which the employee is engaged. A disease shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of continuous exposure to the normal working conditions thereof.

> A claimant, then, must prove the following elements to receive worker's compensation benefits for having contracted an occupational disease:

1. A disease;
2. The disease must arise out of and in the course of the claimant's employment;
3. The disease must be due to hazards in excess of those hazards that are ordinarily incident to employment;
4. The disease must be peculiar to the occupation in which the claimant was engaged;
5. The hazard causing the disease must be one recognized as peculiar to a particular trade, process, occupation, or employment; and
6. The disease must directly result from the claimant's continuous exposure to the normal working conditions of the particular trade, process, occupation, or employment.

The Hearing Commissioner, as we read his orders, found that each claimant proved the first and second elements ("the employee is totally and permanently disabled as a result of chronic obstructive lung disease ... caused by her exposure to environmental dust, lint, and pollutants, including cotton dust, during the course of her employment with [Mohasco] from 1954 through May of 1980"); the third element ("the ... disease [was] due to hazards greater than those ordinarily incident to normal employment"); the

fourth element ("the ... disease ... [was] peculiar to her occupational environmental exposures"); and the sixth element ("the ... disease ... [was] the result of the [claimant's] continuous exposure to her working conditions [at Dixiana Mill])." He nowhere determined, however, whether each claimant either proved or failed to prove the fifth element, *i.e.*, whether the disease suffered by each claimant either was or was not "caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment."

## I.

Mohasco maintains the record contains "no evidence" to prove each claimant's chronic obstructive lung disease is peculiar to the occupation in which each claimant was engaged.

Section 42-11-10 uses, as indicated above, the phrase "peculiar to the occupation" in defining the term "occupational disease." This phrase does not mean that the disease must either originate exclusively from or be unique to the particular kind of employment in which the employee is engaged before it can be considered an "occupational disease." *Bowman v. Twin Falls Construction Co.*, 99 Idaho 312, 581 P. (2d) 770 (1978); *Glodenis v. American Brass Co.*, 118 Conn. 29, 170 A. 146 (1934). The phrase also does not mean that the disease must be one not otherwise found among the general public. *Bowman v. Twin Falls Construction Co., supra.* Rather, a disease "is peculiar to the occupation in which the employee is engaged" if the disease is either directly caused by, especially incident to, or the natural consequence of the work in question. *See Booker v. Duke Medical Center*, 297 N. C. 458, 472-73, 256 S. E. (2d) 189, 199 (1979); 99 C. J. S. *Workmen's Compensation* § 169b at 566 (1958).

Here, the record contains evidence that each claimant's lung disease was caused by and was incident to her employment as a textile worker and therefore was "peculiar to the occupation" in which she was engaged.

Dr. Ira Barth, Rising's family physician and a plant physician for other textile mills in the Pee Dee area, testified that Rising's lung disease resulted from her "always [being] a mill worker." Dr. Emmett W. Flynn, a surgeon, testified

Rising's lung disease most probably was caused by her work environment and smoking.

Page's lung disease, according to Dr. Barth, resulted from her exposure to dust in her work environment. Dr. Flynn believed her lung disease was "probably related to her occupation."

Moreover, the medical evidence shows Rising's and Page's diseases paralleled each other. Indeed, they manifested similar symptoms.

## II.

Mohasco next questions the Industrial Commission's findings that each claimant's employment at its Dixiana Mill greatly increased her risk of contracting lung disease. It contends "no evidence" supports these findings.

Before a disease can be considered an "occupational disease," the disease, Section 42-11-10 prescribes, must be "due to hazards in excess of those ordinarily incident to employment." In other words, the disease must be caused by the worker's exposure to hazards greater than those involved in ordinary occupations. *See Glodenis v. American Brass Co.*, 118 Conn. at 40, 170 A. at 150; *Young v. City of Huntsville, Ala.*, 342 So. (2d) 918, 922 (Ala. Civ. App. 1976), *cert. denied*, 342 So. (2d) 924 (Ala. 1977); 99 C. J. S. *Workmen's Compensation* § 169b at 567 (1958).

Here, the record reflects evidence supporting the Industrial Commission's findings that each claimant was exposed to "hazards in excess of those ordinarily incident to employment."

The record shows the claimants were continuously exposed in their work areas to high concentrations of environmental dust and lint, much of it airborne.

The observations made by the Hearing Commissioner at Mohasco's request of the claimants' work environment confirmed the presence of dust and lint in large amounts. He saw accumulations of "material that looked like snow or cotton" and "a light film of [a] dusty type material" on the frames of a textile machine like that operated by each claimant. The Hearing Commissioner also saw "white, stringy looking things varying in length from one to three inches" and "a good bit of airborne dust or lint." *Cf. Dykes v.*

*Daniel Construction Co.*, 262 S. C. 98, 202 S. E. (2d) 646 (1974) (Commission's observations of injured employee not considered as evidence but may be used by reviewing court to determine propriety of award).

### III.

Mohasco also argues the record contains "no evidence" to support the Industrial Commission's findings that the employment conditions of each claimant caused her lung disease.

As in all worker's compensation cases, the burden is upon the claimant in an occupational disease case to prove such facts as will entitle the claimant to compensation. *Alatex, Inc. v. Couch*, 499 So. (2d) 1254 (Ala. Civ. App. 1984); *see Kennedy v. Williamsburg County*, 242 S. C. 477, 131 S. E. (2d) 512 (1963). The claimant must show a causal connection between his or her alleged occupational disease and the conditions of the employment in which the claimant was engaged. *Alatex, Inc. v. Couch, supra;* 100 C. J. S. *Workmen's Compensation* § 555(18) at 733 (1958).

Each claimant has shown a causal connection between her lung disease and the conditions of her employment at the Dixiana Mill.

We have mentioned already Dr. Barth's and Dr. Flynn's testimony and their conclusions that each claimant's lung disease most probably resulted from her work environment. Their testimony provides sufficient evidence of causation, especially when viewed with each claimant's testimony about her lack of respiratory problems before coming to Dixiana Mill and the onset of her respiratory problems after being employed at the mill for a period of time. *See* 3 LARSON, THE LAW OF WORKMEN'S COMPENSATION §§ 79.51(d) and 80.32(a) (1983).

### IV.

Mohasco's last complaint relates to the Industrial Commission's failure to find that each claimant's disease was not caused by a hazard recognized as peculiar to the claimant's particular occupation.

In South Carolina, as in Alabama [*see* Ala. Code § 25-5-110 (1975)]; a disease cannot be deemed occupational unless the disease results from a hazard that is

"recognized as peculiar to a particular trade, process, occupation or employment." South Carolina Code of Laws § 42-11-10 (1976). Stated otherwise, a disease cannot be regarded as an "occupational disease" unless the disease results from a hazard that is acknowledged as different from hazards found in the general run of occupations. *Young v. City of Huntsville, Ala., supra.*

As we noted above, however, there are no findings concerning whether each claimant either proved or failed to prove her lung disease was "caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment."

Because the Industrial Commission failed to make this critical finding in each case, legal error controls its finding that each claimant suffers from an occupational disease within the meaning of Section 42-11-10. *Cf. Lail v. Georgia-Pacific Corp.*, 285 S. C. 234, 328 S. E. (2d) 911 (1985) (Industrial Commission's findings will not be set aside if supported by substantial evidence and not controlled by legal error). For this reason, therefore, we reverse and remand each case to the circuit court for the purpose of entering an appropriate order remanding each case to the Industrial Commission for a determination concerning whether the disease suffered by each claimant was a disease "caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment." *See* South Carolina Code of Laws § 1-23-380(g) (Supp. 1984); *Drake v. Raybestos-Manhattan, Inc.*, 241 S. C. 116, 127 S. E. (2d) 288 (1962), *overruled on other grounds, Hunt v. Whitt*, 279 S. C. 343, 306 S. E. (2d) 621 (1983); *Frady v. Pacific Mills*, 231 S. C. 601, 99 S. E. (2d) 398 (1957); *Gray v. Laurens Mill*, 231 S. C. 488, 99 S. E. (2d) 36 (1957); 101 C. J. S. *Workmen's Compensation* § 788 at 27 (1958).

Reversed and remanded.

HOWELL, J., concurs.

SHAW, J., dissents with an opinion.

SHAW, Judge (dissenting):

I respectfully dissent in two parts. First, this court's reviewing authority is governed by the Administrative Procedure Act 1-23-310 et seq. of the S. C. Code of Laws (1976 as

amended). *Lark v. Bi-Lo, Inc.*, 276 S. C. 130, 276 S. E. (2d) 304 (1981). This court may reverse or modify decisions of the Industrial Commission only if the findings and conclusions are clearly erroneous in view of the reliable, probative and substantive evidence on the whole record. § 1-23-380(g)(5) S. C. Code of Laws. Substantive evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached, or must have reached, in order to justify the action. *Law v. Richland County School District*, 270 S. C. 492, 243 S. E. (2d) 192 (1978). I would affirm on this scope of review of the record.

Second, it is difficult, if not impossible, for the General Assembly to draft legislation to fit every industry in this state regarding worker's compensation. It is written to fit the general industrial community and is subject to interpretation on a case by case basis.

Appellant placed great emphasis on whether an inside industrial pollutant was organic or inorganic. It claims if a pollutant is inorganic but causes a permanent lung disorder it is not compensable.

Section 42-11-10 states:

> The words "occupational disease" mean a disease arising out of and in the course of employment which is due to hazards in excess of those ordinarily incident to employment and is peculiar to the occupation in which the employee is engaged. A disease shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation or employment as a direct result of continuous exposure to the normal working conditions thereof. No disease shall be deemed an occupational disease when: (5) It is any disease of the cardiac, pulmonary or circulatory system *not* resulting directly from abnormal external gaseous pressure exerted upon the body or the natural entrance into the body through the skin or natural orifices thereof of foreign organic or inorganic matter under circumstances peculiar to the employment and the processes utilized therein; (emphasis added).

We have byssinosis, asbestosis, silicosis which are recognized labels of lung disorders. Just because these ladies don't have one of the above labelled diseases doesn't mean their lungs weren't damaged. Evidence was substantial that they worked in a lint laden atmosphere for over 26 years each. Dr. Ira Barth, a plant physician testified Mrs. Rising's lung disease resulted from her continuous mill work. Dr. Emmett Flynn, a surgeon, testified Mrs. Rising's lung disease most probably was caused by her work environment and smoking. All the medical evidence indicated both ladies suffered similarly.

It is the established law of this state that any reasonable doubt as to the construction of a workmen's compensation law must be resolved in favor of the claimants, its provisions reconciled if possible, its purposes effectuated and its presumptions and penalties directed toward the end of providing coverage rather than noncoverage. *DeBerry v. Coker Freight Lines*, 234 S. C. 304, 108 S. E. (2d) 114 (1959).

It is the duty of appellate courts to interpret the statutory law and develop the common law as it should be to meet the needs of a continually changing society. I would affirm.

## ORDER ON REHEARING

GOOLSBY, Judge:

The claimants Mable Hayes Rising and Margaret Louise Page petitioned this court for a rehearing. A rehearing was conducted on the grounds asserted in the petition that questioned our holding that the Industrial Commission made no findings concerning whether each claimant proved or failed to prove her lung disease was "caused by a hazard recognized as peculiar to a particular trade, process. occupation, or employment."

The claimants maintain that the Industrial Commission implicitly made these findings when it found in each case that "the employment conditions which precipitated the employee's occupational disease ... were due to hazards greater than those ordinarily incident to normal employment and peculiar to her occupational environmental exposures." We disagree.

As we mentioned in Part I of our opinion, a claimant must prove six elements in order to establish that he or she is entitled to receive worker's compensation benefits for having contracted an occupational disease. Mere proof of the third element ("the disease must be due to hazards in excess of those hazards that are ordinarily incident to employment") and of the fourth element ("the disease must be peculiar to the occupation in which the claimant was engaged"), contrary to the claimant's argument, does not necessarily establish the fifth element ("the hazard causing the disease must be one recognized as peculiar to a particular trade, process, occupation, or employment").

Accordingly, we adhere to our earlier opinion. The stay of remittitur heretofore granted is revoked.

HOWELL, J., concurs.

SHAW, J., dissents.

SHAW, Judge (dissenting):

I adhere to my dissent in the earlier opinion.