2245

J. Carlene FOX, Appellant v. NEWBERRY COUNTY MEMORIAL HOSPITAL, Employer, and Palmetto Hospital Trust, Carrier, Respondents.

(451 S.E. (2d) 28)

Court of Appeals

*Everett Hope Garner* of *Holler, Olive, Lengel & Garner,* Columbia, *for appellant.*

*Lana H. Sims, Jr.* and *Andrew F. Lindenmann,* both of *Ellis, Lawhorne, Davidson & Sims,* Columbia, *for respondents.*

Heard Sept. 9, 1994.

Decided Oct. 24, 1994; Reh. Den. Dec. 6, 1994.

HOWARD, Acting Judge:

J. Carlene Fox (Claimant) appeals the circuit court's reversal of an award of worker's compensation under the Occupational Disease Act. We reverse.

The claimant filed a claim with the Worker's Compensation Commission, alleging she contracted a disease known as herpetic whitlow during her employment as a nurse at the Newberry Memorial County Hospital. The employer/carrier de-

nied compensation, asserting the condition was not work-related.

The claimant started work as a nurse in April of 1986. Prior to this time, she had no incidence of herpes. In July of 1986 she had an initial outbreak of herpetic whitlow, manifesting itself as a small blister on the back side of her left index finger. She was not diagnosed with the disease until October of 1986.[1]

According to the testimony, herpetic whitlow is a form of herpes usually infecting the finger around the nail cuticle. This viral disease infects the nerve root and manifests itself as an abscess with blisters around the nail bed. It may also manifest itself as a painful, red streak up the arm to the elbow. The disease is transmitted by contact with an open lesion of another person with herpes and enters through a break in the skin, such as a small cut or even an inflamed hangnail.

During the summer of 1986, claimant's nursing duties included staffing the emergency room where she normally treated one to ten patients. Though she could not specifically relate from which particular patient she contracted the disease, she testified the number of patients with fever blisters increased in the summer. As part of the treatment of these patients, claimant took their temperatures with her left hand, which caused her to come into direct contact with the fever blisters. Because this condition was so common to patients seen in the summer, it would not be noted in any record unless it was the reason for the emergency room visit. Moreover, she testified she had no exposure, physically or sexually, to anyone with herpes outside of her employment. She maintained a celibate lifestyle during the period in question, and her ex-husband had not been diagnosed with herpes to her knowledge.

The Hearing Commissioner found the herpetic whitlow to be an occupational disease and awarded compensation to the claimant. The Full Commission affirmed the award.[2] The em-

---

[1] The claimant has had thirty-two outbreaks of herpetic whitlow. Her symptoms accompanying the outbreaks include blisters, arthritic- or sunburn-type pain emanating from the back of the left arm to the elbow, sleepiness, and a red streak extending from the infected left index finger to the arm, across the left breast to the abdomen, groin and left thigh.

[2] This case has a tortured procedural history which is not necessary to relate in this opinion.

ployer/carrier appealed the award to the circuit court, which reversed the decision of the Commission. This appeal followed.

Coverage of occupational diseases has always lagged far behind coverage for injury by accidents. Prior to the enactment of statutory provisions allowing compensation, occupational diseases were generally not compensable. 1B Arthur Larson, Workmen's Compensation Law § 41.20 (1993); 99 C.J.S. *Workmen's Compensation* § 169 (1958). Because a single time, place, or event constituting an "accident" in the scope of employment could not be identified as the cause of a gradually developed disease, worker's compensation acts were thought to be incapable of supporting a disease claim. The occupational disease problem was perhaps too general or extensive to be dealt with under compensation acts as opposed to general health insurance legislation. 1B Larson, *supra,* § 41.20.

Occupational disease coverage, however, evolved to compensate persons for diseases which were clearly incident to a continuous exposure to some hazard in their industry greater or different than those involved in ordinary living or ordinary occupations. 99 C.J.S. *Workmen's Compensation* § 169. The earliest coverage of diseases took the form of inclusion within the broad definition of "injury." Then, some states began listing particular diseases and the process in which they are acquired as compensable. Finally, the modern trend has been toward expansion into general coverage. 1B Larson, *supra,* § 41.20. A few examples of these diseases include asbestosis, silicosis, bronchitis, bursitis, and the commonly named diseases black lung and brown lung.

South Carolina has enacted a general coverage statute which broadly defines an occupational disease instead of limiting it to specific diseases or processes. S.C. Code Ann. § 42-11-10 (1985). Under our law, a claimant must prove the following elements, by a preponderance of the evidence, to recover benefits for contraction of an occupational disease:

1. A disease;
2. The disease must arise out of and in the course of the claimant's employment;
3. The disease must be due to hazards in excess of those hazards that are ordinarily incident to employment;

4. The disease must be peculiar to the occupation in which the claimant was engaged;

5. The hazard causing the disease must be one recognized as peculiar to a particular trade, process, occupation, or employment; and

6. The disease must directly result from the claimant's continuous exposure to the normal working conditions of the particular trade, process, occupation, or employment.

*Mohasco Corp., Dixiana Mill Div. v. Rising,* 289 S.C. 130, 135, 345 S.E. (2d) 249, 252 (Ct. App. 1986), *rev'd on other grounds,* 292 S.C. 489, 357 S.E. (2d) 456 (1987). The Commission found the claimant met her burden of proof on these elements and awarded compensation.

On appeal from the circuit court, the claimant argues the court erred in substituting its own judgment for that of the Commission. We agree. Under the circuit court's scope of review, the Commission's award of compensation must be affirmed if supported by substantial evidence in the record. *Smith v. Squires Timber Co.,* — S.C. —, 428 S.E. (2d) 878 (1993). Substantial evidence is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but it is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the Commission reached or must have reached to justify its action. *Miller v. State Roofing Co.,* — S.C. —, 441 S.E. (2d) 323 (1994).

When determining whether the record contains substantial evidence to support the Commission's findings, the circuit court cannot substitute its own judgment on the weight of the evidence. *Gibson v. Florence Country Club,* 282 S.C. 384, 318 S.E. (2d) 365 (1984). Therefore, the standard for reversing the decision of the Commission is not whether the circuit court's findings were substantially supported by the evidence, but whether substantial evidence supported the Commission's findings. *Id.; Lark v. Bi-Lo, Inc.,* 276 S.C. 130, 276 S.E. (2d) 304 (1981).

The Commission found the claimant's condition to be a disease, and it found she established through her testimony the requisite causal connection between the disease and the condi-

tions of her employment. The record amply supports these findings.

To qualify as an occupational disease, the claimant must next establish the disease is due to hazards in excess of those hazards that are ordinarily incident to employment. To do so, the evidence need only demonstrate that she was exposed to a greater risk by reason of her employment than the general public. *Sturkie v. Ballenger Corp.*, 268 S.C. 536, 235 S.E. (2d) 120 (1977). The claimant testified she was regularly in physical contact with patients having fever blisters, an herpetic infection. Under her testimony, as well as that of Dr. Mark Davis, a certified internist, this situation constituted a hazard in excess of those hazards of ordinary living or ordinary occupations.

The claimant was next required to show both the disease and the hazard causing the disease (physical contact with patients) is peculiar to the medical profession. However, the phrase "peculiar to the occupation" does not mean the disease "must either originate exclusively from or be unique to the particular kind of employment in which the employee is engaged," nor does it mean the disease "must be one not otherwise found among the general public." *Mohasco*, 289 S.C. at 138, 345 S.E. 92d) at 253. Instead, the claimant must only show the disease is "either directly caused by, especially incident to, or the natural consequence of the work in question." *Id.*

In this case, substantial evidence in the record exists to show herpetic whitlow is a disease peculiar to the medical profession because of the increased exposure to the virus. The claimant presented expert testimony from Dr. Davis that herpetic whitlow is more common in the medical profession because of the greater risk of exposure and contact to herpetic lesions. Also, Dr. Carl A. Johnson, a dermatologist, testified the literature in medical journals reports herpetic whitlow is most common in the medical profession.[3] This testimony not only demonstrated the hazard of physical contact is

---

[3] As another ground for reversal, the circuit court found the Commission erred by admitting a medical treatise into evidence, which discussed herpetic whitlow as occurring predominantly in the medical profession. The circuit court held the claimant relied solely on this treatise to show herpetic whitlow is an occupational disease. We find the court erred in this conclusion as

peculiar to the medical profession, but the disease of herpetic whitlow was also peculiar to claimant's profession as a nurse because it was incident to or a natural consequence of her work.

Finally, the claimant was required to prove the disease directly resulted from the claimant's continuous exposure to the normal working conditions of the particular trade, process, occupation, or employment. According to the claimant, she came into contact with the mouths of patients in the emergency room on a daily basis while taking their temperatures. Though right-handed, she used the index finger of her left hand to detach the expendable types from the hospital thermometer. Many patients, especially in the summer, had fever blisters. The substantial evidence supports the conclusion the disease directly resulted from the claimant's continuous exposure to the fever blisters of her patients.

We find no South Carolina cases which have previously addressed the specific question of whether a disease contracted through a single contact with a condition to which a claimant has been continuously exposed is compensable as an occupational disease. In a remarkably similar case in North Carolina, a laboratory technician at Duke Medical Center contracted serum hepatitis and was awarded compensation under the occupational disease statute.[4] *Booker v. Duke Medical Center,* 297 N.C. 458, 256 S.E. (2d) 189 (1979). As with herpetic whitlow, serum hepatitis may be transmitted by a single contact with contaminated blood through a nick, cut or scratch on the skin. The claimant in that case handled one or more blood samples infected with serum hepatitis every day. He routinely

claimant presented other expert testimony on the predominance of herpetic whitlow in the medical profession. Therefore, because the treatise was merely cumulative of other evidence in the record, its admission into evidence is harmless error. *See, e.g., Long v. Conroy,* 246 S.C. 225, 143 S.E. (2d) 459 (1965) (the admission of improper evidence is harmless where it is merely cumulative of other evidence).

[4] North Carolina not only lists several diseases which it considers to be occupational diseases in its statute, but also provides the following general definition to include an even wider range of diseases: "Any disease . . . which is proven to be due to causes and conditions which are characteristic and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13). This statute and the law interpreting it are very similar to South Carolina law.

spilled these samples on his fingers. Serum hepatitis is also found in members of the general public. Therefore, he was unable to identify the time and place he became infected. However, the claimant established he had never had hepatitis before the job and had never known any person outside of his employment who had hepatitis. He presented expert testimony that there is a much greater likelihood blood workers will contract the disease given the public is not as exposed to this hazard. *Id.* 256 S.E. (2d) at 192-93.

The North Carolina Court of Appeals denied compensation because this disease did not develop gradually through prolonged exposure to harmful conditions. The North Carolina Supreme Court reversed this decision, stating " 'Definitions of "occupational disease" should always be checked against the purpose for which they were uttered.' " *Id.* at 197 (quoting 1B Larson, *supra*, § 41.31). The supreme court refused to focus on the lack of gradualness of the disease, but instead reiterated that the purpose of worker's compensation is to provide comprehensive coverage. The court focused on whether "there was a recognizable link between the nature of the job and an increased risk of contracting the disease in question." *Id.* at 198. It found the greater risk involved with exposure to blood provided the nexus between the disease and the employment. *Id.* at 200. It further found the necessary causation because the evidence substantially excluded the possibility the disease was contracted outside of employment. Therefore, the claimant's disease was compensable as an occupational disease. *Id.* at 201.

We find the reasoning of the *Booker* case to be persuasive. *See Parrot v. Barfield Used Parts*, 206 S.C. 381, 34 S.E. (2d) 802 (1945). We also note that the South Carolina Occupational Disease Act excludes "ordinary diseases of life to which the general public is equally exposed, . . . *unless* there is a constant exposure peculiar to the occupation itself which makes such disease a hazard inherent in such occupation." § 42-11-10(4) (emphasis added).

The employer/carrier argue that herpetic whitlow is not of the same nature as previously recognized occupational diseases such as asbestosis, silicosis, bronchitis, bursitis, brown and black lung. They argue herpetic whitlow is a disease common to the general public which is transmitted by a single

contact, not as a gradual development resulting from the continuous exposure to a hazard peculiar to employment. Under this analysis, claimant's disease is in the nature of "an injury by accident," a theory not addressed by the Commission in its ruling.[5]

We find this reasoning to raise a distinction without a difference, one which we are unwilling to recognize in light of our general policy to construe the Worker's Compensation Act in favor of coverage rather than exclusion. *See Davis v. South Carolina Dep't of Corrections*, 289 S.C. 123, 345 S.E. (2d) 245 (1986). We agree with the reasoning of the *Booker* court that a disease which meets the definition and requirements under South Carolina law of an "occupational disease" should be treated as compensable regardless of the fact that it might also qualify as "an injury by accident." *See Booker*, 256 S.E. (2d) at 198. As Larson's treatise explains, with the expansion of occupational disease statutes to generally provide coverage,

> this contrast between accident and occupational disease is gradually losing its importance, and awards are frequently made without specifying which category the injury falls in. . . . The important boundary becomes now, not that separating occupational disease from accident, since compensability lies on both sides of that boundary, but the boundary separating occupational disease from diseases that are neither accidental nor occupational, but common to mankind and not distinctively associated with the employment.

§ 41.31.-.32. Thus, our inquiry is not focused on whether the disease arose from a single accidental contact. Rather, we focus our inquiry on whether the disease is distinctively associated with employment as defined under § 42-11-10. In *Stokes v. First Nat'l Bank*, 306 S.C. 46, 410 S.E. (2d) 248 (1991), the court recognized proof of a "causative event" is not required

---

[5] Employer/carrier argue the Commission did not specifically find the disease compensable as an injury by accident. The claimant did not appeal from the Commission's order or posit this theory as an additional sustaining ground with the circuit court. Thus, employer/carrier argue the Commission's "implicit" ruling that claimant's condition is not an injury by accident is the law of this case.

to establish injury by accident. *See also Sigmon v. Dayco Corp.,* — S.C. App. —, 449 S.E. (2d) 497, 498 (1994). Therefore, the only practical effect of treating claimant's condition as an occupational disease where the disease is contracted from a single, unidentifiable contact is to allow claimant the benefit of filing the claim within two years of the date of diagnosis, and notice thereof, rather than two years from the date of the accident.

In reversing the circuit court's order, we recognize that we are identifying as compensable a contagious disease commonly found in the public under our worker's compensation scheme. However, we emphasize claimants must still prove each element articulated in *Mohasco.* It is these limitations which protect the worker's compensation legislation from being used as a general health insurance plan.

For the foregoing reasons, we find substantial evidence exists to support the Commission's award of compensation for claimant's condition as an occupational disease. Hence, the circuit court erred in reversing the decision of the Commission. The appealed order is hereby

Reversed.

SHAW and GOOLSBY, JJ., concur.